Sale *v.* Saunders.

---

### JOHN B. SALE *vs.* JAMES E. SAUNDERS.

In construing a will executed in a sister State, in relation to property in that State, at the testator's death, the same construction must be given which would be given by the courts of that State.

In the State where the will was made, a negro was bequeathed "to S. as trustee of L., the wife of F., and F. the husband, to be enjoyed and used by them during their natural lives, free from any liability for the debts of her husband, and by the survivor of them during his or her natural life," &c. *Held*, in that State the husband had an estate for life in the slave, subject to sale by execution at law against him.

The wife, by virtue of her survivorship, can maintain an action for the slave against the purchaser at a sale on execution against the husband.

At common law, the rights of the wife were so completely merged in the husband, that he became the owner of all the personal property she had at the date of marriage or subsequently acquired, and also of such choses in action belonging to her as he might have reduced into possession. Such choses as were not reduced into possession, survived to the wife. It is *held*, that an estate was granted to the wife upon a contingency that could not happen during the life of the husband, nor vest in the wife until after or at

Sale *v.* Saunders.

the period of his decease, and that the husband could not, therefore, have any property or interest in such contingent estate which his creditors could reach.

The husband could not, without the consent of the wife, dispose of her interest in reversion so as to bar her right of survivorship; *held*, that a creditor of the husband, by means of a forced sale, could not acquire any other right or interest than a voluntary sale by the husband would convey.

If it were considered that the husband had acquired a title by virtue of his marital rights, which he could sell or dispose of, it does not follow that it is such an estate as could be sold by virtue of an execution against him at law.

In error from the circuit court of Monroe county; Hon. F. M. Rogers, judge.

The opinion of the court and the points made by counsel in their briefs, contain a sufficient statement of the facts of the case.

*Goodwin*, for plaintiff in error.

1. The defendant in error claims title to the boy George, under the latter clause of the fourth item of the last will and testament of Joseph Saunders, which is in the words and figures following, to wit:

" And the other moiety I give and bequeathe unto James E. Saunders, as trustee of my said daughter, Lucy Fenner, and her husband, to be enjoyed and used by them, during their natural lives, free from any liability for the debts of her said husband, and by the survivor of them, during his or her natural life; and at the death of such survivor, to descend," &c.

This will bears date the 11th October, 1831, and was proved and admitted to record, in the county of Lawrence, and State of Alabama, where the testator resided, on the 21st day of August, 1833, in the county court of said county.

The sale of the slave, by the sheriff of Lawrence county, Alabama, to the plaintiff in error, took place in that county, and the questions presented are,— 1st. What interest or estate did Robert Fenner take under this clause of the will of Joseph Saunders, deceased? and 2d. Was that interest the subject of seizure and sale by execution, in the State of Alabama?

In Alabama, where the right of both plaintiff and defendant attached to the property in controversy, the one under the will

3*

of Joseph Saunders, and the other under purchase at execution sale, the question, whether the interest of the husband and wife in property, devised or settled, as in this case, is the subject of levy and sale under execution, is no longer an open one. It has been settled by a series of decisions in that State, that, if the wife, by the terms of the gift or devise, be entitled to the usufruct in property, and the same comes to the possession of the husband, the wife's interest in the property may be levied on and sold to pay the debts of the husband.

In the case of *Hale et al.* v. *Stone*, 14 Ala. Reports, 803, the Supreme Court of Alabama, after reviewing all the cases decided by that court, extract the following principles:

1. " That while the owner of property may so convey or bequeathe it, as to create a separate estate in a *feme covert*, yet such claim on the part of a married woman being against common right, it is necessary that the instrument under which the claim is made must clearly speak the intention of the donor to exclude the husband, otherwise he shall take the property.

2. " That in the absence of such declared intention to exclude the husband, the intervention of a trustee will not have the effect of vesting in the wife a separate use. But if the wife, by the terms of the gift, be entitled to the usufruct in the property, and the same comes to the possession of the husband, the wife's interest, whether for years, for life, or in fee, may be sold under execution at law, against him.

3. " In cases where the instrument limiting the estate contains directions in respect to its enjoyment, use, or management, wholly incompatible with any dominion of the husband over it, his creditors cannot reach it under execution at law."

In the case before the court, the devise is " to Saunders, as trustee, for his daughter, Lucy Fenner, and her husband, to be enjoyed and used by them during their natural lives." It was the intention of the devisor, in making this bequest, to provide for, not only his daughter, but his son-in-law also. The bequest is to both during their natural lives. No intention is shown to create a separate estate in the wife, by the words used, nor to exclude the husband from the use and enjoyment of the property. But it is given to him as the husband of the daughter of the

devisor, and he was intended to be provided for, in the same way, and to the same extent; as the daughter.

If it was the intention to vest in the husband and wife a life estate in this property, why devise to them jointly, " and to the survivor during his or her natural life ? "

It is insisted, however, that the words " and by the survivor of them during his or her natural life," limited the interest of the husband to his own life, and enlarged the interest of the wife to an estate for her life. 'Can this position be maintained upon principle, or authority ? Suppose the bequest had been to " James E. Saunders, as trustee for my daughter, Lucy Fenner, for and during her natural life," she certainly would have taken an estate for life ; and upon its coming to the possession of the husband, would be liable to be sold for his debts. Does the introduction of his name as a joint beneficiary and usee of the estate, create a greater estate in the wife than if the husband had not been named ? Certainly not. It is true that the devisor intended to give to his daughter an interest in the use of his property for and during her life, whether the husband died first or not ; and it is equally true that he intended to provide for the husband in the same way. But the interest of the wife was neither increased nor diminished by the introduction of the word " survivor." The whole estate had passed by the use of the previous words, " during their natural lives." The property was to be " enjoyed and used by them during their natural lives, free from any liability for the debts of the husband, and by the survivor of them during his or her natural life, and at the death of such survivor to descend," &c.

It is in reference to the words, " free from any liability for the debts of the husband," that the word " survivor " is used. He did not intend that the property should be sold for the husband's debts ; but that the ("survivor" should enjoy and use it during his or her life, without any power or right on the part of the creditors to sell it. If the husband had " survived " the wife, it will not be seriously contended that his interest would not pass by sale under execution. Upon what principle is it that the interest of the wife is enlarged, and becomes distinct from and independent of that which the husband took in the property ?

Certainly not by the use of the word " survivor," when that word was used as indicating an intention to protect the enjoyment of the thing, for the time previously limited, in the possession of the object of his bounty.

Such a restraint upon the right to alienate is void. *Blackstone Bank* v. *Davis*, 21 Pick. Rep. 42; 5 Watts, 181; 2d U. S. D., 503, s. 189; *Brandon* v. *Robinson*, 18 Ves. 429; 12 Ala. Rep. 42. The court is also respectfully referred to the following cases, decided in Alabama, in which it is held that the intervention of a trustee makes no difference where there are no words in the instrument excluding the marital rights of the husband. *Lamb, Trustee*, v. *Wragg & Stewart*, 8 Porter, 73; *Carleton & Co.* v. *Banks*, 7 Ala. Rep. 32; *Bank* v. *Wilkins*, Ib. 589; *O' Neil et al.* v. *Teague et al.*, 8 Ib. 345; *Anderson* v. *Brooks*, 11 Ib. 953; *Cook* v. *Kennerly & Smith*, 12 Ib. 42. In the last case cited, the court say, (p. 50,) " As to his own life estate, it is obvious it is a pure legal estate, and may be sold under execution; and the question in respect to the life estate of the wife, reduced to his possession, has been also decisively settled by the decision of this court, that it may be reached by execution at law." Any doubt that may have existed in the minds of the court, in regard to the correctness of principle here laid down, is completely removed by the case of *Hale* v. *Stone*, 14 Ala. 803. *Mechen, Ex.* v. *Mechen*, 15 Ib. 373. In this last case, the court say, " that by the marriage, the husband became entitled to all the wife's chattels in possession, her legal existence being merged in his, and the delivery of the property to the wife was a delivery to him. His marital rights then attached and became complete. In such case, says Mr. Clancy, 2, 3, he takes it free from any right of survivorship in his wife; he may dispose of it in any way during his life, or bequeathe it at his death; and if he make no such disposition of it, his personal representatives, and not the wife, though she should survive him, shall have it."

If, then, the husband becomes entitled to all the wife's chattels in possession, upon the principle that her legal existence is merged in his, and without any right of survivorship in the wife; and if this principle prevail in cases of settlements and bequests to married women, where no separate estate is vested

in them, upon what hypothesis is it that in bequests to the husband and wife, his interest is limited to his own life, and the right of survivorship is extended to the wife? If the rule prevails in the one case, what is it that creates the exception in the other? If intention is to govern, it is stronger in favor of settlements on husband and wife, than where she alone is provided for.

2. James E. Saunders, the trustee, who brings this action, has no right to maintain the same. In the case of *Cook* v. *Kennerly & Smith*, 12 Ala. Rep. 42, the Supreme Court of Alabama say, "that the mere naked title outstanding in the trustee, to preserve the remainder, gives him no power over the possessory interest in the slaves, and that such interest vests in the donee for life, who is entitled to the use. The trustee has nothing further to do with them, than to convey, at the appointed time, the legal title to those entitled in remainder." This principle is fully recognized in the case of *Hale et al.* v. *Stone*, 14 Ala. Rep. 811.

In the case of *Lenoir* v. *Rainy*, 15 Ala. Rep. 667, decided at the January term, 1849, the Supreme Court of that State say:—"The trustee, after the property was delivered to the wife, had nothing further to do with it. The husband, having the possession, is entitled to all the rights in the property secured by the deed to the wife; and as we have seen the limitation over could not take effect, the absolute proprietorship of the property vested in the husband. The trustee could not sue the husband and recover upon his title, for he has no right to the possession. The legal title being impotent as against the husband, it is equally so as against the vendee; otherwise a perpetual restraint would be imposed by the terms of the deed upon the alienation of the property, which the law will not permit. In such cases, it is manifest the trust becomes wholly inoperative." The reason is, that the trust is executed, and not executory. He has nothing to do with the estate, has no control over it whatever, the use and enjoyment having been given to others, in whom the whole interest vested; and in this case not even having the legal title to be conveyed to the remainder, even at the death of the survivor, for the language used is, that at that time the estate

shall "descend" to them.   James E. Saunders had no right to institute this suit, and cannot maintain the same in his own name, nor for the use of Lucy Fenner.

*Harris & Harrison*, on the same side.

*Lock E. Houston*, for defendant in error.

It is submitted, that by the "will" of Joseph Saunders, Lucy and Robert Fenner took a mere usufructory, (or equitable,) interest in the property here in controversy, which was not the subject of seizure and sale under execution at common law, and therefore plaintiff in error took no title by his purchase under execution from the circuit court of Lawrence county in Alabama.   This principle your honors have decided in the cases of *Thornhill* v. *Gilmer*, 4 S. & M. 153, and *Goodwin* v. *Anderson*, 5 Ib. 730.   It has also been decided in 17 Johnson, 350, and 5 Cowen, 485; 5 Bos. & Pull. 461; and 16 Peters, Rep. 25.   The same principle has been decided in South Carolina and Virginia, in cases involving almost the identical state of facts presented by this case; and the reasoning of the court, especially in the South Carolina cases, is so clear, forcible, and conclusive, that we hope to be pardoned for calling the particular attention of the court to them.   See the cases of *Jorr & Hodges* v. *Hodges et al.* 1 Spears (S. C.) Eq. Rep. 593; *Rice* v. *Burnett*, Ib. 579. See also *Roanes* v. *Archer*, 4 Leigh, Rep. 550, and *Lewis* v. *Adams et al.* 6 Ib. 320.   But in order to break the force of these decisions, it is contended by plaintiff in error, that the Supreme Court of Alabama have ruled differently; that it has there been determined, that an equitable interest is the subject of seizure and sale under execution at common law, and that such a sale passes a good title in the equity; and that plaintiff in error having purchased the property in controversy in Alabama, his rights accrued there, and must be governed by the decisions in that State.   The general principle is admitted, that the laws of the State where rights are acquired, must govern those rights. But when rights are sought to be enforced in another than the State in which they were acquired, if the party seeking to enforce them claims the benefit of the laws, in their enforce-

Sale *v.* Saunders.

ment, of the State in which they accrued, he must show to the court in which he is prosecuting his rights, what the laws of the State were, in which he acquired those rights; and that cannot be done by merely introducing and reading them as authority during the argument of the case, but he must introduce and prove them as other facts. *Martin & Akin* v. *Martin, Pleasants & Co.* 1 S. & M. 176; 6 Ib. 44; *Bender* v. *Reynolds,* 12 Ala. Rep. 457, 458; *Inge* v. *Murphy,* 10 Ib. 885. The principle is also recognized in 1 Phil. Ev. 401, and in 3 Phil. Ev. 1136, 1137, note 776; and also in Story, Conf. of Laws, 527. Indeed such seems now to be the settled rule of law. Has, then, the plaintiff in error brought himself within this rule, is the question. This will be best answered by the record, for it is the only medium through which this court can look to determine what evidence was introduced in the court below. Nowhere, on the face of the record, does it appear that a single judicial decision of Alabama was introduced and proven, as a fact, on the trial in the court below. Indeed, such a thing was not done.

The case of *Machen* v. *Machen,* 15 Ala. Rep. 373, has been referred to, and it is important to know the nature of the case quoted, and what facts it involved. The court, in the case quoted, decided that the language of the will of Merry Hall was such as that if real estate had been the subject of bequest, an estate tail would have been created; and as it was personal property, the first taker took the " absolute fee." The language of the will of Merry Hall, which passed the estate in controversy in the case quoted, is as follows: " I leave to Jane Machen, two negroes, Tamer and Prince, during her life, then to her bodily heirs," &c. By the rule in Shelly's case, the term " heirs " are words of " limitation," not of " purchase," and by the use of them, Merry Hall vested in his daughter, Jane Machen, an " absolute estate " in the negroes, she being the " first taker," and consequently on their coming to the possession of her husband, his marital rights attaching, he took an " absolute estate " in them, which " freed them from any right of survivorship to her." So that " he might dispose of them in any way during life, or bequeathe them at his death, or if he failed to do either, his personal representatives, and not his wife,

Sale *v.* Saunders.

would take them, though she survived him." It will be per-
ceived, that the legal effect of the language used in the bequest
in that and the case at bar, widely differ.   In that case the
terms used created an "absolute fee" in the first taker, (wife).
In the case at bar, the bequest gives an estate for the joint lives
of husband and wife, survivorship to the longest liver, and
remainder to the children of the wife, &c.   In the case quoted,
it is clear that the court founded their decision alone on the
ground that the language used vested in the wife the "absolute
fee," which the husband's marital rights took on its coming
to his possession.   It was "in such a case," that Mr. Clancy,
2, 3, says "the husband takes the estate free from any right of
survivorship," and not in a case like the one here in controversy.

It will be found by a thorough examination, even, of the
"decisions in Alabama," that they have not gone to the extent
of making the wife's right of survivorship liable for the debts of
the husband, where the facts were similar to those in this case.
Indeed, in no case, except where on account of the terms of the
bequest, the law vested the fee in the wife, without excluding
the husband's marital rights.   But in every case similar to
this, although they have never had occasion to decide the ques-
tion directly, that court has tacitly recognized the wife's right of
survivorship, free from liability for the husband's debts.   In the
case of *Carleton & Co.* v. *Banks*, 7 Ala. Rep. 37, where the
terms of the gift vested in the woman, (while sole,) a life estate
in the negroes, the court decide, that on their coming to the
husband's possession, they were liable for his debts, during his
life, but in case she survived him, whether her right of survivor-
ship was affected by such sale, was a query.   That was cer-
tainly a case much more strong in favor of his marital rights
attaching, and swallowing up her right to survivorship, than
the one here in issue.   In the case of the *Branch Bank at
Montgomery* v. *Wilkins*, 7 Ala. Rep. 589, where the property
was "settled on a trustee, for the joint use of husband and wife,
for their lives, with remainder for life to the survivor, and re-
mainder in fee to the issue," &c., a case almost identical with
the one under investigation, the court say, "we are clear in the
opinion, that the husband must be entitled to a life interest in

the slaves under the deed. - What will be the interest of his wife or children, if they survive him, we need not now say." Thereby very clearly intimating that she would have an interest if she survived him. In the case of *Cook* v. *Kennerly & Smith*, 12 Ala. R. 53, which presents as near as can well be conceived, the same state of facts as this one; the court in the conclusion of their opinion, say, " our judgment is that, upon the facts stated in the record, the life estate of the husband and of the wife, during the life of the husband, in the slaves in controversy, are liable at law for the debts of the husband." There again the court, though not in a positive, yet in a negative form, decide that the wife has an interest in the survivorship, that cannot be subjected to the debts of the husband. If such was not meant, why have said " during the life of the husband." If it was not meant by the court to limit the liability to the life of the husband alone, and leave the wife's interest as survivor untrammelled by his debts, why have said " it was liable during the life of the husband," instead of saying during " their lives "? In the case of *Bender* v. *Reynolds*, 12 Ala. R. 456–457, the same principle is recognized; and the court there say, " the husband's marital rights invest him with an estate, notwithstanding the settlement, exclusive of his wife, during his life." But it does not say it invests him with an estate exclusive of his wife, in her right of survivorship, as is contended by plaintiff in error in this case; but it is clearly intimated that if she survives him, that interest inures to her. In *Hale* v. *Stone*, 14 Ala. R. 808, the same principle is recognized. Indeed, there is not an authority, even in Alabama, that goes to the extent of subjecting the wife's right of survivorship to the husband's debts, under a form of bequest similar to the one here presented; so that if we chose so to do, (which we do not,) we think we might safely rest this case on the decisions of that State. *Allen and wife* v. *White*, 16 Ala. R. 201. The case of *Lenoir* v. *Rainy*, 15 Ib. 667, referred to by counsel, we humbly conceive, has no relevancy to this case. There the language of the deed gave the absolute estate to the first taker (wife). It having once passed out of the trustee, he could never regain it, and consequently lost all power over the possessory interest. His was

then in truth a mere "naked legal title." Well might the Supreme Court of Alabama, in that case say, "that the trustee, after the property was delivered to the wife, had nothing further to do with it; that the husband in possession was entitled to all the rights in the property secured by the deed to the wife, and, as we have seen, the limitation over could not take effect; the absolute proprietorship in the property vested in the husband. The trustee could not sue the husband and recover on his title, for he had no right to the possession. In such a case, it is manifest, the trust becomes wholly inoperative." It will be seen, that the case at bar and the one just quoted, widely differ. In the case at bar, the first taker took no "absolute estate;" "no fee." The right of survivorship remains to the wife, and remainder to her children. The survivor has the right to the possession, but has no legal title to enable her to sue for it, nor can the trustee convey it to her, for he is bound to hold it for the benefit of the remainder-men; consequently she has no remedy, but for the trustee to sue for her use, as he has properly done. At the death of the survivor, it will be the duty of the trustee to convey title to the remainder-men, and if suit is necessary, to place them in possession of the property, they must sue in their own names.

*Stephen Adams*, on the same side.

Mr. Justice YERGER delivered the opinion of the court.

In the year 1831, Joseph Saunders, who resided in the State of Alabama, made his last will and testament, which was duly probated in that State, and among other bequests contained in it, was one of a slave, in the following words: "I give and bequeathe unto James E. Saunders, as trustee of my said daughter, Lucy Fenner, and her husband, to be enjoyed and used by them during their natural lives, free from any liability for the debts of her said husband, and by the survivor of them during his or her natural life," &c. The slave so bequeathed was sold in the State of Alabama during the lifetime of Fenner, as his property, by virtue of an execution on a judgment against him, and the plaintiff in error became the purchaser. Fenner, the

husband, died, and this suit was brought by Saunders, the trus-
tee, to recover the slave, for the use of Mrs. Fenner, who has
survived her husband, and a judgment rendered in his favor. It
is insisted by the counsel for the plaintiff in error, that, by the
decisions of the Supreme Court of Alabama, Fenner, the hus-
band, had not only an estate in the slave during the joint lives
of himself and wife, which could be sold by an execution at
law, but also an estate during the lifetime of his wife, in the
event of her surviving him, equally subject to the payment of
his debts by execution at law; and that the plaintiff in error, by
virtue of the sale made in this case, has become the owner of
that estate, and can hold the slave by virtue thereof against the
surviving wife or her trustee. As this will, and the sale, by vir-
tue of which the plaintiff in error claims, were made in Alabama,
of course the rights of the parties to the slave must depend upon
the laws of that State.

Upon examining the cases to which counsel have referred us,
we find that the Supreme Court of Alabama has held that the
conveyance of a slave, " in trust, for the joint use of the hus-
band and wife, for their lives, remainder to the survivor, and
remainder in fee to the issue of the marriage," vests in the hus-
band an estate for life, which may be sold at law by virtue of
an execution against him. 7 Alabama R. 589; 2 Porter, R.
463.

It may be remarked, that the construction thus given by the
courts of that State to such conveyances, is opposed to the rule
established by the Supreme Court of Virginia in regard to them.
It has been held by the latter court in several cases, that by " a
conveyance of slaves to the joint use of the husband and wife dur-
ing their lives, with remainder to the survivor," the husband and
wife each become seized of the entirety, and that the wife has
such an interest in the estate, that the husband cannot dispose
of it without her consent, nor can it be sold for the debts of her
husband. 5 Munf. R. 86; 4 Leigh, R. 550.

It is also opposed to the common law doctrine in relation to
conveyances of real estate, by similar words, the rule in regard
to which has been stated by Chancellor Kent in the following
language: " The same words of conveyance which would make

two other persons joint tenants, will make the husband and wife tenants of the entirety. Both are seized of the entirety, and neither can sell without the consent of the other, and the survivor takes the whole." 5 Johns. Ch. R. 427. See also 2 Black. Comm. 133; 2 Vernon, R. 120; 7 Yerger, R. 332.

As we are called upon, however, in this case, to give a construction to a will made in Alabama, in relation to property in that State, at the testator's death, we must give to it that construction which would be given to it by the courts of Alabama; and, without intending to express any opinion as to the rights which a husband would acquire under a will or conveyance of property in this State, containing similar language to that in the will before us, we do not doubt that in Alabama the husband had an estate for life in the slave subject to sale by execution at law against him.

This brings us to the consideration of the second question presented by this record. Can the wife, by virtue of her survivorship, maintain an action for the slave against a purchaser at execution sale against the husband? We think she can. We have carefully examined the cases in Alabama cited for the plaintiff in error, but do not find in them, or in any other decision in that State, that the contingent estate limited to the wife in the event of her survivorship, was subject to sale by the husband without the consent of the wife, or by the creditors of the husband. In the case of *Hale et al.* v. *Stone,* 14 Alabama R. 803, and chiefly relied upon by counsel, the court merely decide, that the intervention of a trustee will not have the effect, in the absence of a declared intention to exclude the husband, to vest in the wife a separate estate; and, " if the wife, by the terms of the gift, be entitled to the usufruct in the property, and the same comes to the possession of the husband, the wife's interest, whether for years, for life, or in fee, may be sold under execution at law against him." This language merely declares the old rule on this subject, and the case comes very far short of deciding that the reversionary interest of the wife in personal property, or an estate limited to her upon a condition which could not take effect until the death of the husband, was subject to sale for the debts of the husband.

Sale *v.* Saunders.

It is true, that, by the rules of the common law, the rights of the wife were so completely merged in the husband, that he became the owner of all the personal property she had at the date of the marriage or subsequently acquired, and also of such choses in action belonging to her as he might have reduced to possession; but, in regard to such choses in action as were not reduced to possession, the same survived to the wife. Now, in regard to estates granted to the wife upon a contingency that could not happen during the lifetime of the husband, it is clear, inasmuch as no title or estate could vest in the wife until his decease, that she had no property or right in action capable of being reduced to possession by him, and that he could not, therefore, have any interest or property in such contingent estates which his creditors could reach. Certainly no legal estate could vest in him in right of his wife, inasmuch as none could vest in her until the happening of a contingency which could not take place until after or at the period of his decease.

A distinguished law writer has remarked, in relation to the wife's right of survivorship in reversionary estates, that " all the decisions deny the absolute power of the husband to bar the rights of the wife by an assignment for valuable consideration;" and in many of the decisions, his power to do so, even with the consent of the wife, has been denied. Clancy on Rights of Husband and Wife, 144–146.

If the husband, without the consent of the wife, could not dispose of her interests in reversion, so as to bar her right of survivorship, *a fortiori* a creditor of the husband, by means of a forced sale at execution, could not acquire any other right or interest than a voluntary sale by the husband would convey.

These cases seem to be based upon the principle, that until these estates in reversion vested in the wife, there was no interest or property therein capable of being reduced into possession by the husband; and that unless he could reduce them into possession, he could do no act, without consent of the wife, which would bar her right by survivorship. Upon this point, the case of *Hornsby* v. *Lee et al.*, 2 Madd. Ch. Cas. 16, the decision of the Master of the Rolls will be found conclusive, and his reasoning clear and satisfactory. In that case the husband

4*

and wife made an assignment of the wife's reversionary interest in some government stock. After the death of the husband and of the person on whose death the wife was to take, the wife claimed the stocks as survivor against the assignee of her husband and herself; and it was held she was entitled to recover, because she had not such an interest in the stocks as could have been reduced into possession, and, therefore, not such an interest or estate as could be assigned by the husband so as to bar her. right.

The principle decided there is fully applicable to the case at bar. For, while it is true that in the case cited the interest of the wife was a reversion in choses in action, and in the case before us it is an estate in a slave, yet it is an estate dependent on a condition which cannot take place till the death of the husband, and, therefore, a right or interest which it is impossible that he could reduce to possession.

But, if it were conceded that the husband had acquired a title by virtue of his marital rights, which he could sell and dispose of, it does not follow that it is such an estate as could be sold by virtue of an execution at law against him. Indeed, we incline very much to the opinion that it could not. In Tennessee, where this question has arisen, it has been held, that "a remainder in slaves cannot be levied on and sold by execution at law." *Allen* v. *Scurry*, 1 Yerger, 36. In that case, the court said, "the remainder or reversion of a live chattel is a pure contingency, a bare possibility whether it will ever exist or not. On the part of the purchaser it is a perfect hazard; the thing acquired may be of some value, or it may be of none; and a sale under such circumstances would be a gaming transaction, subversive of good morals, ruinous in its consequences, and injurious to the rights of other creditors, by the sacrifice of that fund which, in proper time, might be competent to the satisfaction of all their claims;". and hence the court concludes, that a remainder in a slave being a mere contingent or possible estate, incapable of seizure by the sheriff, and, in this respect, like a chose in action, is not subject to sale by execution, according to the principles of the common law.

If the principle of this decision be applied to the case before

us, it is obvious, that any estate or interest which the husband could have in the remainder limited to his wife and dependent upon her survivorship, was entirely uncertain and contingent, a bare possibility, which might or might not be fixed at a future day, an incorporeal and intangible estate, incapable of seizure by the sheriff, and, therefore, by the rules of the common law, not a subject of levy and sale. We see no error in the judgment below.

Let the judgment be affirmed.