BRADBURY *v.* McLENDON.

[80 South. 633, Division B.]

1. APPEAL AND ERROR. *Review. Finding of chancellor.*

   The findings of a chancellor based on the testimony of a single witness who testified from his personal knowledge will be sustained on appeal, though in direct and necessary conflict with the testimony of two other witnesses.

2. LANDLORD AND TENANT. *Advances by landlord. Evidence.*

   The findings of a chancellor will not be sustained on appeal where based on the mere opinion of a witness as to the amount of cotton seed it would take to plant the leased premises, while two other

witnesses testified as to the actual amount furnished by the landlord for such purposes.

3. PARTNERSHIP. *Liability of loan.*

Where a member of a partnership authorized to do so borrows money for the partnership, it will be bound, though the other two partners did not .know of such borrowing.

4. PARTNERSHIP. *Power of partner. Changing purchase to hiring.*

A contract for the sale and purchase of property can be changed into a contract for rental of the same where the purchase money note is surrendered and 'the property re-delivered to the seller.

5. LANDLORD AND TENANT. *Accounting. Evidence.*

Where a member of a firm of tenants testified that the landlord was authorized to sell a bale of cotton at the price shown in the landlord's account and the landlord testified that he did so sell it and that this was a fair price, the chancellor was not authorized to find for the other tenant that it was worth more, where such finding was based on the testimony of a broker, merely that it was worth a certain amount more.

6. FRAUDS. *Statute of. Performance of contract. Surrender of lease.*

Where the writing evidencing a lease of land has been surrendered and possession of the rented premises delivered up by the managing partners of the firm of tenants, and possession taken by the landlord, and other considerations passed, in such case, the surrender of the lease was a completed, executed contract, unaffected by the statute of frauds, though such lease, at the time of the surrender, had more than a year to run.

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Suit by J. L. McLendon against J. E. Bradbury. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*H. C. Mounger* and *W. E. Hobbs,* for appellant.

*J. B. Guthrie,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

O. H. Kennedy and J. L. McLendon in· January, 1916, leased a certain tract of land from J. E. Bradbury for a period of five years and entered into possession of said lease. At the time of the lease it was understood that Kennedy and McLendon would furnish

themselves, but after moving upon the place it appeared they were not able so to do, and approached Bradbury to get him to supply them. It was stated by both Kennedy and McLendon that they were partners, and that Kennedy was to manage the financial transactions of said partnership, and that McLendon was to oversee the plantation, and have charge and management of the plantation in directing plantation activities. Kennedy applied to Bradbury for various articles, including money to be furnished them. When the articles and cash furnished amounted to two thousand dollars Bradbury applied to Kennedy to give him a note for the amount, which Kennedy did, but did not sign the firm name to the note, signing his individual name. Later Kennedy and McLendon applied to a bank for a loan of money, offering to execute a deed of trust on the crops grown on the place. The bank refused to loan the money on this security unless Bradbury would indorse the note, which Bradbury did. The first note executed to the bank was for two thousand, seven hundred dollars and subsequently a second note was given, also indorsed by Bradbury, for one thousand dollars. The lease contract called for rent, for the first year one thousand, five hundred dollars and for each subsequent year of lease one thousand, eight hundred dollars and notes were given Bradbury for these amounts.

In the fall of the year following the execution of the lease Kennedy sold certain cotton grown upon the place and deposited the proceeds in a bank at Gunnison, Miss. His partner, McLendon, notified the bank from which the loan was obtained of this transaction by Kennedy, and requested the bank to take steps to recover the property sold, or its proceeds, to be applied on the deed of trust given the bank. The cashier of the bank notified Mr. Bradbury and told Mr. Bradbury that the bank was looking to Bradbury for the payment of these sums, and requested Bradbury to take

steps necessary to protect the interests of the bank and of himself as indorser of said note. Thereupon Bradbury took charge under the deed of trust and obtained the money deposited at Gunnison, with a small exception and took charge of the produce grown upon the place and sold the same, applying the proceeds to the payment of the deed of trust, and also to his account, Among the items furnished to Kennedy and McLendon by Bradbury was certain live stock which was sold to them at and for the sum of nine hundred dollars. After Bradbury took charge of the property, Kennedy, the financial agent of the firm of Kennedy & McLendon, approached Bradbury for a settlement of affairs between them, proposing to give up the lease and to return the live stock furnished, and to pay for the use of the live stock twenty dollars per head for the mules and twenty-five dollars for a horse so furnished. stating to Bradbury that McLendon had authorized him to get out of the lease as best he could; Kennedy stating that McLendon stated that he could not be made to pay because he had no property. Bradbury agreed to the proposition and surrendered to Kennedy the notes taken for the stock, etc., and Kennedy turned over to Bradbury the lease contract that Bradbury had executed to the firm of Kennedy & McLendon, and Kennedy moved off the place and Bradbury took charge, and made new contracts for subsequent years. In May, 1917, Kennedy filed a bill in the chancery court praying for an accounting and for a cancellation of deeds of trust, and also claimed, upon the theory that he had not surrendered the lease, that he was entitled to one-half of the increased amount derived from the land by Bradbury under new leases. Bradbury filed an answer and vross-bill setting forth an account of the crops sold, the amount furnished by him to Kennedy & McLendon, and amounts expended by him in having the crops gathered, sold, etc.

Kennedy was introduced as a witness, and testified that the account made by Bradbury was true and correct, and that he, as financial agent of the firm, had authorized Bradbury to sell the produce grown upon the place, and that he had surrendered to Bradbury the written lease and the stock furnished and the produce grown in satisfaction of their demands and moved away. Bradbury also testified to the same effect and to the correctness of the account furnished. McLendon testified, admitting that Kennedy was authorized to manage the financial part of the partnership and that he was to oversee and manage the plantation. He testified, however, that the item four hundred and eighteen and one-half bushels of corn at one dollar per bushel was incorrect, and that the true amount of corn was three hundred and fifty bushels, and the true price agreed upon was fifty-five cents per bushel. He testified that the account of cotton seed furnished, six thousand, six hundred and sixty pounds, was incorrect, and that only a little over two thousand, and three hundred pounds of seed was furnished. He denied that the farming implements stated in the account of Bradbury were sold to McLendon and Kennedy, but that his understanding was that the farming implements were to go with the place, and he denied that the cash items charged in the account of Bradbury were received and used by the partnership. He also denied part of the account filed for picking cotton and gathering produce.

The chancellor in his decree found there was an overcharge of one hundred and ninety-five dollars and ninety cents on corn, and that there were only three hundred and fifty bushels at sixty cents per bushel, with six per cent. interest added for credit prices, and found there were only two thousand, three hundred and ninety-five pounds of cotton seed at thirty-five dollars per ton, with six per cent. added for credit prices, making the item for seed forty-eight dollars and eighty-six cents instead of two hundred and one dollars

and seventy cents, and found that the item for three hundred and eighty dollars, farm implements, was an erroneous charge, and should not have been ·charged, and found that McLendon was not liable for any of the items of cash amounting to total sum of one thousand dollars, and found that the account for picking cotton amounting to four hundred and thirty dollars and twenty cents was erroneous and an overcharge, and that the sum to be allowed should be seventy-five dollars and sixty cents making an overcharge of three hundred fifty-four dollars and .sixty cents, and found that the item of insurance on stock, thirty-four dollars, should not be charged against McLendon, and that the items as charged for rent of seven mules, one hundred and forty dollars, and rent of one horse, twenty-five dollars, and the item of interest on the two thousand dollar note for four months at eight per cent. should not be charged against McLendon, and the total amount of overcharges amount to the sum of. two thousand, three hundred and thirty-five dollars and sixty-seven cents, and that this should be deducted from the total amount of charge, shown to be eight thousand, two hundred and seventy-one dollars and forty-three cents, making the charges total five thousand, nine hundred and thirty-five dollars and seventy-six cents instead of eight thousand, two hundred and seventy-one dollars and forty-three cents. The court further found and adjudged that the ·complainant was entitled to a credit of twenty-five dollars and fifty-five cents on a bale of cotton sold at Itta Bena weighing six hundred and forty pounds, and that the complainant, McLendon, was also entitled to one hundred and ten dollars and forty-two cents for cotton seed not accounted for, and also that the accounts showed a credit of one hundred and forty-six dollars for corn received by Bradbury instead of one hundred and four dollars, as stated in Bradbury's account, that the total credits appearing on the account should be eight thousand, three hundred and seventy dollars and one cent

instead of the amount shown thereon, and that deducting the amount properly charged on the account, to wit, the sum of five thousand, nine hundred and thirty-five dollars and seventy-six cents, would leave a balance of two thousand, four hundred and thirty-four dollars and twenty-five cents, and that McLendon is entitled to one-half of this sum, or one thousand, two hundred and seventeen dollars and twelve cents, which the court adjudged to McLendon with six per cent. interest from the date of the decree. The court further ordered that Bradbury pay over to said J. L. McLendon the sum of three hundred dollars, being one-half the rent value for the lands for the year 1917 in excess of the amount which said land was leased to Kennedy & McLendon, and also that Bradbury pay six hundred dollars for the rent on the premises involved for the year 1918, to be paid on or by November 15, 1918, the same appearing to be the amount said premises rented for in said year in excess of the contract price to Kennedy & McLendon. The court further ordered that McLendon is entitled to one-half of different sums said premises may be rented for in the year 1919 and 1920 in excess of one thousand, and eight hundred dollars per year. The court further adjudged that McLendon was entitled to the use and occupation of a house and lot in the town of Moorhead described in the lease, and that he is not accountable or liable for any rent during the life of the lease, that is to say, until after the year 1920; also found that Bradbury had a bale of cotton unsold grown during the year 1916 by Kennedy & McLendon, and directed that said cotton be turned over to J. L. McLendon, or to account to McLendon for the proceeds thereof, and that Bradbury pay all costs. These several findings on the part of the chancellor are assigned as error.

We have carefully considered the evidence in the record, and we think that on the testimony of both Kennedy and McLendon it is shown that Kennedy had

authority to contract with Bradbury for all supplies to be furnished, and that the testimony both of Kennedy and Bradbury shows that the corn, cotton seed, farming implements, and cash items for which the note for two thousand dollars was given were furnished Kennedy by Bradbury for the use of the plantation, and that these items were such items as would ordinarily and usually be used in operating the plantation, and after examining McLendon's evidence we fail to find anything in his testimony which legally disputes that items of farming implements or cash embraced in this note were furnished Kennedy. The only competent evidence to contradict said account is as to the items for corn and cotton seed and cotton picking. As to the item for corn, McLendon's testimony is in direct and necessary conflict with Kennedy and Bradbury, and is based upon his personal knowledge and information, and the chancellor's finding as to the item of corn will be approved. As to the item of cotton seed, two hundred and one dollars and seventy cents, both Bradbury and Kennedy testified that this item is correct, while McLendon on this proposition says that it took two thousand, three hundred and ninety-five pounds of cotton seed to plant the cotton. He does not testify that this seed was not furnished to Kennedy or that Kennedy failed to contract for and receive them. Bradbury's testimony is that it takes one bushel of cotton seed to plant one acre of ground, and this estimate per acre is not disputed directly. It appears that there were something over three hundred acres of land rented. In taking the testimony of McLendon as to this item as true, we think the chancellor was manifestly in error, and therefore erred in disallowing this item as charged in the account of Bradbury.

The items of cash charged in Bradbury's account are admitted to have been received by Kennedy, and, whether McLendon knew of this or not, the firm is liable for these cash items, and McLendon's rights,

if any, are against his partner, Mr. Kennedy. As to the items for the expense of picking cotton there is a conflict of evidence; Kennedy and Bradbury testifying that his account is correct, and McLendon disputing its correctness. On this conflict of testimony the chancellor's finding is upheld as to these items; and as to the item of rent of seven mules at one hundred and forty dollars and horse rent at twenty-five dollars, we think that Mr. Kennedy had the authority to make this contract with Mr. Bradbury for the firm, and that, as the notes for the purchase of the stock were surrendered and the stock redelivered to Bradbury, making an executed agreement, the chancellor's finding is reversed, and these items are allowed to Bradbury. As to the item of interest, fifty-three dollars and thirty-three cents on the two thousand dollar note for four months at eight per cent., the chancellor's finding is sustained.

The finding of the chancellor that McLendon was entitled to a credit of twenty-five dollars and fifty-five cents on a bale of cotton shown by Exhibit A sold at Itta Bena, No. 525, weighing six hundred and forty pounds, the only evidence to support this finding is that a cotton broker stated that this cotton was worth this amount more than was shown on the account of Bradbury. Kennedy says that Bradbury was authorized to sell it for the price shown in the account, and Bradbury testifies that it was sold for that amount, and that this was a fair price. We do not think the proof sufficient to authorize charging Bradbury with this item, and the chancellor's finding as to this item is reversed. As to the item of one hundred and ten dollars and forty-two cents charged to Bradbury for cotton seed grown on the place and not accounted for, we do not think the proof sustained the chancellor's finding. It appears that certain seed grown on the place was sold to the gin by McLendon and Kennedy for the repayment of borrowed money. Therefore this item is disallowed to McLendon. As to the item of one hundred and forty-

six dollars charged against Bradbury instead of one hundred and four dollars, we think the chancellor had evidence from which he might find this item, and this item is accordingly allowed.

As to the item of the chancellor charging Bradbury with three hundred dollars for year 1917, and six hundred dollars for the year 1918, and for whatever excess there might be for 1919 and 1920, on account of new lease, we think the chancellor must be reversed. It is contended here by the appellee that, inasmuch as the lease was in writing, and necessary to be in writing to make a valid lease for five years under our statute, it would necessarily take an instrument of writing to surrender the lease, as it had longer to run than one year. If it was a mere executory agreement unperformed in any particular, this contention would be sound, but on the particular facts of this case, where not only was the instrument of writing surrendered and possession delivered up by Kennedy, and possession taken by Bradbury, but also other considerations passed between the parties, to wit, the surrender of live stock for which the firm was indebted, it presents a case where the partnership would be estopped to set up the plea of the statute of frauds or other plea of the necessity of writing to make valid the surrender of the lease. The entire plantation property was taken charge of by Bradbury under this agreement, his notes against the partnership given up, and the partnership lease ending through its agent, authorized to manage its financial business, having surrendered and delivered the instrument of writing creating the lease, and Bradbury having obtained full possession under such surrender, makes the transaction a completed, executed contract. As to the item for rent of the house and lot in the town of Moorhead, it appears from Bradbury's testimony that McLendon agreed to pay ten dollars a month rent in case he held over longer than January, 1917, and according to McLendon's testimony he agreed to pay

Bradbury ten dollars per month provided the court held that the surrender of the lease was valid. As we hold the surrender of the lease under the .circumstances of this case was valid, the chancellor's holding that McLendon was not liable for rent will be reversed, and he will be held liable to Bradbury for rent at ten dollars a month from the 1st of January, 1917, to the date that he surrenders possession.

It follows that the judgment of the chancery court is reversed, and judgment will be entered here in accordance with the foregoing opinion.

*Reversed, and judgment here.*