**BIRD et al. v. STEIN et al.**

No. 474.

United States District Court
S. D. Mississippi, W. D.

Jan. 23, 1952.

Brunini, Everett, Grantham & Quin, Vicksburg, Miss., for plaintiffs.

Edward J. Bogen, Greenville, Miss., Farish, Keady & Campbell, Greenville, Miss., for defendants.

MIZE, District Judge.

All parties to this suit are children of V. A. Stein and Sarah Stein and until a short time prior to the bringing of the suit they were devoted to each other and had implicit confidence in each other. The parents, V. A. Stein and his wife, Sarah Stein, had reared eight children in a commendable fashion on "Little Hope" Plantation and endeavored to keep the close relationship of the family during their own lives and each left a will at death. V. A. Stein died Aug. 27th, 1933. Sarah Stein

died in 1935. V. A. Stein executed a will on Nov. 26th, 1930 and a codicil thereto December 30th, 1930. This will was probated and by its terms he undertook to set up a trust in his property and appointed Mrs. Gold and Lawrence Stein trustees therein. Sarah Stein executed a will but same was never probated or became effective and its contents are material herein only in so far as it may have an evidentiary value.

This controversy stems from the will of V. A. Stein and is an action by the plaintiffs by which they seek an accounting from Lawrence Stein as trustee under the will and charge him with fraud and commingling trust property with his own and making valuable investments which they allege accrued for their benefit. The defense is set up that Lawrence did not qualify or attempt to act as trustee but had a specific agreement with all the parties that he would not act under the trust, but that if the other children wanted to rent the property—Little Hope Plantation—to him for a definite sum per year he would take it that way but that under no circumstances would he operate the trust. Further that as a matter of law there was no trust under the will because V. A. Stein owned no interest in any property whatever at the time of his death except some personal property which he had willed to Lawrence in fee. That the deed to the property known as Little Hope Plantation was acquired by V. A. Stein and Sarah Stein as joint tenants and not as tenants in common and at the time of the death of V. A. Stein the entire property vested in Sarah Stein and that during her life he rented from her and after her death he rented from all the other heirs and paid them the rent which they accepted.

Out of the vast amount of conflicting testimony several questions arise both of law and fact. It may be said that the first one and major one to arise is:

Did the deed by which the property was acquired create a joint tenancy with the right of survivorship, and if it did, was there a termination of it during the life of V. A. Stein? Defendants urge it did so create and that it was not severed by conduct or otherwise. Plaintiffs say it did not create a joint tenancy under the Mississippi statute, but if it did it was severed and terminated during the lifetime of V. A. Stein by conduct and written instruments. Other questions to arise are:

1. What property passed under the will of V. A. Stein?

2. Did Lawrence Stein have a definite agreement with his brothers and sisters that he would not act under the trust but would agree only to rent the property from them for a definite amount per year?

3. If there were no agreement what would be the rights of the parties?

4. Was there an equitable election by Lawrence Stein and is he now estopped to deny he was acting as trustee?

Title to Little Hope Plantation was acquired by a deed dated Feby.— 1904 and is well worded but the only important part here is as follows: "Does sell, transfer and convey unto Victor A. Stein and Sarah Stein, * * * as joint tenants and not as tenants in common." These grantees, husband and wife, went into possession of the property and lived there until their deaths. They were thrifty but uneducated. They reared the family there but Lawrence was the one they depended upon more than any of the others and he was the most successful one. He showed business ability and an ambition to work early in life.

The applicable Mississippi Statute is section 834, Code of 1942 and reads as follows: "All conveyances or devises of land made to two or more persons, or to a husband and wife, shall be construed to create estates in common, and not in joint-tenancy or entirety, unless it manifestly appears from the tenor of the instrument, that it was intended to create an estate in joint-tenancy or entirety with the right of survivorship; but this provision shall not apply to mortgages or devises, or conveyances made in trust."

It is clear from the language of the deed that it was intended to create a joint tenancy and not tenants in common. More convincing language could not have been chosen, and from the entire language of the deed it is equally apparent that it

was drawn by a lawyer or by one versed in legal phraseology. It must be assumed that the parties reduced to writing what they had in mind and what was intended when they chose this language. When a joint tenancy is created the right of survivorship follows as an incident thereto. A joint tenancy can be created only by the acts of the parties and as known at common law required unity of time, title, interest and possession.

Joint tenancies are not favored in Mississippi but such title has not been abolished. When it is intended to create such a title apt language must be chosen. Wolfe v. Wolfe, 207 Miss. 480, 42 So.2d 438; McAllister v. Plant, 54 Miss. 106; Doran v. Beale, 106 Miss. 305, 63 So. 647. In the Doran case the court held that a conveyance to two persons jointly was not sufficient as the language did not manifestly import an intent to create a joint tenancy. However in the Wolfe case it was held that it was not necessary to use the exact language of the statute and that where appropriate language was used, the court would not be justified in reading out of the deed any part of it. When the scrivener of the present deed used the words "as Joint Tenants, and not as Tenants in common", he made clear his meaning. Therefrom it manifestly appears that it was intended to create a joint tenancy with the right of survivorship. Many additional authorities outside the state could be cited in support of this holding but the Mississippi ones are controlling and suffice. An interesting case, however, is that of Mitchel v. Frederick, 166 Md. 42, 170 A. 733, 92 A.L.R. 1412, and contains an instructive announcement upon the question. Therefore upon the death of V. A. Stein the fee-simple title vested in Sarah Stein.

Plaintiffs urge that if a joint tenancy was created by the deed, it was severed by the conduct of the parties and particularly that of V. A. Stein during his lifetime. It is shown that for the years 1931, 1932 and 1933 V. A. Stein rented all the property to Lawrence Stein for $3000.-00 per year and that Sarah Stein had nothing to do with the transaction. However, during all that time she was living on the place with V. A. and of course accepting all the privileges of it as a homestead and the support of her husband and made no objections to his leasing it as an entirety. It is also shown that V. A. Stein at one time executed a deed of trust covering the crops grown on Little Hope Plantation together with the implements and livestock on the place. Lawrence Stein substantiated the leasing arrangement with his father by bank statements and other memoranda and circumstances, but it definitely appears that he rented only the farming land and that V. A. and Sarah Stein continued to occupy the land and hold possession subject to the farming done under the lease. The lease was oral but valid under the law of Mississippi, being from year to year renewed. A verbal lease for one year is good. McCroy v. Toney, 66 Miss. 233, 5 So. 392, 2 L.R.A. 847. The property from 1928 through 1933 was assessed on the land rolls as "V. A. Stein Property." V. A. Stein made a will dated Nov. 26th, 1930, wherein he undertook to devise to his wife, Sarah, for her life, "All of my right, title and interest in and to all of my property, both real, personal and mixed" with the remainder in trust for his children and two named grandchildren. Shortly thereafter he made a codicil by which he bequeathed all his personal property not theretofore sold to Lawrence. Lawrence and Mrs. Gold were named as executors and trustees under the purported trust. They probated the will but there was no real estate left and very little personalty and Lawrence out of his own personal funds paid all the debts and funeral expenses and nothing further was done under the will as shown by the probate proceedings thereunder.

Council for plaintiffs contend that by this course of conduct by V. A. Stein there was a severance of the joint tenancy. Conduct and dealing of course under some circumstances can sever such an estate. In 48 C.J.S., Joint Tenancy, § 4, pp. 927, 928, it is said: "A joint tenancy may be terminated altogether by mutual agreement between the parties or by any conduct or course of dealing sufficient to indicate that

all parties have mutually treated their interests as belonging to them in common."

Likewise Tiffany On Real Property (3rd Ed.), Sec. 425, Ch. 9, p. 208, states: "An agreement between joint tenants to hold as tenants in common will have this effect (to sever the joint tenancy), and such an agreement may be inferred from the mode in which the parties deal with the property."

However, 48 C.J.S., Joint Tenancy, § 4, p. 928, states: "The severance must take place before the death of the cotenant who has alienated his interest, and before the remaining cotenant has become the owner of the whole by virtue of his right of survivorship, and, hence, where a conveyance by a cotenant does not take effect until after his death, there is no severance. So, also, there can be no severance of a joint tenancy by devise, since the right of survivorship takes precedence thereof, unless such severance is permitted by statute."

▆▆ Many English authorities as well as many other American authorities are relied upon by plaintiffs to sustain their contention but I do not think they are applicable to the facts of this case. 37 C.J. S., Frauds, Statute of, § 129, p. 619; Bradbury v. McClendon, 119 Miss. 210, 80 So. 633; Peeler v. Hutson, 202 Miss, 837, 32 So.2d 785; Walker v. Polk, 208 Miss. 389, 44 So.2d 477; Wright v. Sullivan, 207 Miss. 249, 42 So.2d 185, and White v. Turner, 197 Miss. 265, 19 So.2d 825, are among those relied upon by them. The more applicable authority to the question is the case of Dimock v. Corwin, 2 Cir., 99 F.2d 799. It of course deals with disposition by will and is not entirely in point. Usually and generally a severance which will defeat a joint tenancy means a separation of the interests of joint tenants, vesting of the interest of one, separated from the interest of the other, in some third person. Tindall v. Yeats, 392 Ill. 502, 64 N.E.2d 903. The course of dealing in this case fails to show that there was a severance or any intent for a severance. There was no mortgage of the real estate and no agreement of any kind or any conduct from which an agreement could be inferred and of course the attempted devise was insufficient. See also Bassler v. Rewodlinski, 130 Wis. 26, 109 N.W. 1032, 7 L.R.A.,N.S., 701, as being somewhat in point.

Defendants contend that there must be an instrument in writing executed by one of the parties to terminate the joint tenancy in Mississippi and rely upon our statute of frauds in support of that contention. Section 832 of Miss.Code of 1942 provides: "An estate of inheritance or freehold * * * in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."

▆ Of course it is well settled that a verbal transfer of realty is void. Smith v. Taylor, 183 Miss. 542, 184 So. 423, and many other authorities could be cited for this.

"An equity in land is as much within the statute of frauds as the legal title, and it is no more competent to convey the one by parol than the other." Connor v. Tippett, 57 Miss. 594.

"A conveyance or contract conveying 'any interest' in land or passing title thereto must be in writing". Osler v. Atlas Assurance Co., 127 Miss. 511, 90 So. 185.

37 C.J.S., Frauds, Statute of § 85, p. 590 states: "The statute of frauds applies to transfers of undivided interests in land such as those held by tenants in common or joint tenants."

▆ However, these authorities are not convincing and are not applicable to the question here. Certainly if one cotenant undertook to convey his interest it would have to be in writing, but there is no conveyance involved here. Under some facts there could be a severance by conduct which would amount to an estoppel and the statute of frauds would not apply. However, such conduct or course of dealing is not present in this case. A severance from a joint tenancy to a tenancy in common is not a conveyance when it arises from the course of dealing, but is simply a change from one form of ownership to that of another form and arises by operation of law. However, the annotator discussing this question in 129 A.L.R. 813, seems to

be of the opinion that if the joint tenancy is in land it can be changed only by a written instrument.

■ Counsel for defendants suggests but does not argue at length the most decisive and controlling point, which in my judgment, definitely settles the severance question. The conveyance here not only created a joint tenancy but also created an estate by the entirety and this is recognized by the statute of Mississippi and the decisions thereunder. In Sale v. Saunders, 24 Miss. 24, the Court said: "The same words of conveyance which would make two other persons joint tenants, will make the husband and wife tenants of the entirety. Both are seized of the entirety, and neither can sell without the consent of the other, and the survivor takes the whole."

■ An estate by the entirety consists of five unities: time, title, interest, possession and marriage, all of which must co-exist, while a joint tenancy possesses all these except marriage. Frederick v. Southwick, 165 Pa.Super. 78, 67 A.2d 802.

For a most exhaustive collection of authorities on this point see, Words & Phrases, Vol. 15, p. 327. Under the authorities there cited and collated it is clear that upon the death of V. A. Stein, Sarah, "simply continued, in virtue of the nature of the tenancy, to possess and own what she already had." Lilly v. Smith, 7 Cir., 96 F.2d 341, 343. In that case it was held that it is the conveyance to both of them, the husband and wife, that creates the estate which ripens into a fee-simple title upon the death of one. In the case at bar all five of the unities are present and under the Mississippi authority supra it follows that upon the death of V. A. Stein title to Little Hope Plantation vested in fee simple in Sarah Stein.

■ It is well settled that if V. A. Stein owned no interest in the property in which he attempted to set up a trust the attempted trust would fail. One cannot create a trust in property which he does not own. The citation of authorities are hardly necessary to support this rule of law. A few will suffice. 54 Am.Jur., Trusts, Sec. 30, p. 43; Restatement on Trusts, sections 66 and 75.

■ Plaintiffs contend, however, that there was a ratification of the trust by dealing with the property as if it were owned by V. A. Stein and that Lawrence Stein is now estopped to deny that V. A. Stein did not own any interest therein. The complete answer to that contention is that Lawrence declined to act as trustee but simply agreed to rent from the owner, Sarah Stein, in her lifetime and thereafter to rent from the heirs upon a stipulated amount. It is true as a matter of law that a trustee's acceptance is inferred when he performs any act as trustee, or unreasonably delays rejection after being informed of his nomination. After acceptance, he cannot withdraw without the consent of the beneficiaries or of the court. Griffith, Outlines of the Law, pp. 486–492. The evidence clearly preponderates that Lawrence declined to act as trustee immediately after the death of V. A. Stein and after the death of Sarah Stein.

■ The foregoing announcement of law and facts answers the main questions that arise from this record except the one as to what would have been the rights of the parties if there were no agreement. Since Lawrence declined to act as trustee, then, under the law in Mississippi the property descended to the heirs as tenants in common and Lawrence having taken possession and farmed it in its entirety he would be liable to his cotenants for the reasonable rent for the interest of each. Courtenay v. Hayden, 127 Miss. 13, 89 So. 777.

Certainly if the conclusions hereinabove reached are correct, then the plaintiffs are not entitled to recover. However, if the above conclusion is wrong and it should be said that the deed conveyed to V. A. Stein and Sarah Stein an estate as tenants in common, the question arises would the plaintiffs be entitled to recover. I think not. The answer to the question turns upon an issue of fact. If, as the plaintiffs contend, Lawrence accepted the trust and undertook to act as trustee, then plaintiffs

would be entitled to recover. They offered testimony tending to establish those facts. On the other hand, as heretofore stated, Lawrence denied all these facts and he and his witnesses testified positively that there was a declination to act as trustee and that he advised the plaintiffs that he would operate Little Hope only upon a rental basis. That the place was not large enough to operate and keep a separate set of books pertaining to the costs of operations and he would not undertake it.

The testimony is conflicting and probably some false testimony on each side but it clearly preponderates and leads to the inevitable conclusion in favor of a definite agreement to rent the property on a rental basis of $3000.00 per year, and later voluntarily raised by Lawrence to $5000.00 per year. I reach this conclusion after mature consideration based upon all the testimony, circumstances, situation of the parties, demeanor of the witnesses on the stand, the reasonableness of their testimony, explanations of circumstances that would be damaging without such explanations and the close family ties that existed for years after the death of the parents.

Sam Stein and L. B. Stein are made defendants by reason of the fact that they are partners with Lawrence in the firm of Stein Bros. and it is sought to bring them in as liable on the theory that the funds of the alleged trust became commingled with the funds of Stein Bros. Lawrence Stein was a successful business man prior to the time of the death of his father and he and one of his brothers had formed the partnership of Stein Bros. before his father's death and had engaged in farming on the Johnson place which was purchased by Lawrence and had bought and set up a gin in the community and operated a mercantile establishment in connection with the other interests of Stein Bros.

During the last three years of V. A. Stein's life Lawrence rented Little Hope from him on a yearly basis of $3000.00 per year and after his death, rented from his mother upon the same basis. After the death of the father Jerome Hafter, an attorney, appeared at the home within a day or so at the request of some of the family and read the father's will at which time there was no objection or dissent by any one as the will undertook to leave a life estate in the property to Sarah Stein, his wife, which as a matter of law she already had, and thereupon as heretofore stated the will was probated and Lawrence and Mrs. Gold qualified as executors but not as trustees. There was no personal property for the estate and Lawrence paid all the bills of the estate.

Sarah Stein died March 10th, 1935 and according to all the oral testimony left a will by which she devised a one-half interest in Little Hope to Sam Stein but this will has never been admitted to probate or proved according to law in any-way and therefore has very little value in solving the issues of the case. Immediately after her death Jerome Hafter at the request of some of the heirs came to the home and read the will and all the children were present as well as all interested parties except Dr. Wolfe. Sam did not want to take under the will as he did not want any more than an one-eighth ($\frac{1}{8}$) part of the property. Under the record in this case since Sarah's will was never admitted to probate, each child took an one-eighth interest and the two grandchildren took an one-sixteenth interest each. During this period and while all the parties were still at the place except Dr. Wolfe the question of the operation of the trust came up and it was then that Lawrence advised them he would not accept the trust but would rent the place from them and the plaintiffs agreed to such terms and the evidence fully supports it. There is positive evidence to support it and the conduct of the parties all substantiate it.

Lawrence at this time already had a large business of his own, including his interest in Stein Bros., the ginning operations and other farming operations and furnishing his employees with supplies and was unwilling to set up an independent set of books that would be required for the trust. The record here shows he kept a record of his business but a very poor set of books. He simply made an entry of his income and outgo, and kept his receipts, invoices and other documents loosely in a

large room. He kept his check stubs and they were introduced in evidence. All these check stubs show that an entry, made at the time of the payments to the interested parties was for rent, however, the check itself did not show it was for rent, but the entry on the stub shows conclusively on the face thereof that it was made at the time. He treated the payment in accord with his agreement. His income tax returns show it was deducted as rent. He not only paid them the rent but often helped them in other ways and no one complained until about 1948 when Mrs. Bird wanted a large sum of money from him and he declined to give it to her. She thereupon threatened him with a suit and soon thereafter this suit joined in by Mrs. Gold was brought. At the time of the discussion of the operation of the trust immediately after the death of the mother Lawrence told them there was no money left to operate the farm and that he would not put it up himself but would only rent the place. No one of the parties offered to put up any money or advance it in any way whatsoever. They all were satisfied at that time. The record is too long to detail all the circumstances supporting his theory but suffice it to say he acted as any other reasonably prudent person would have done under the same conditions. He paid them rent that was reasonable.

Great stress is laid upon the fact that sometime after the death of the mother the income tax department required him to keep a better set of books and that the agent of the tax department required him to make a settlement for some back income taxes. The agent showed him how to set up the books and these books showed him as renting from the trust. The tax agent, Edwards, in making the settlement allowed him to deduct as an expense 10% as trustee's commissions, but as a matter of fact he did not receive or accept the commission. The investigation came about by virtue of the fact that Lawrence was showing on his return a deduction for rent without showing to whom the rent was paid. In 1941 he attached a copy of the V. A. Stein will to his oath made to the Internal Revenue Department and set out that he was renting from the trust. However, this was clearly explained that it was not for the purpose of defrauding the government or any one else but was a plan suggested by Edwards, the tax agent, and does not overthrow the real facts that he was simply renting from the cotenants under the agreement heretofore expressed and found.

Likewise much emphasis is placed upon a release of an indebtedness from Dave Cornblatt, a son-in-law of V. A. Stein, to V. A. Stein which indebtedness was owing at the time of the death of V. A. Stein. The will of V. A. Stein had forgiven all the indebtedness of any child that was owing to him, but because Cornblatt's indebtedness would not fall within the terms of the will as to forgiveness all the heirs agreed that it should be canceled. This was done because of the affection of all of them for Mrs. Cornblatt, a daughter. It is urged that since Lawrence signed it he hereby ratified the trust. For the reasons heretofore stated this conduct did not amount to a ratification.

Lawrence Stein all his mature life from early manhood has been an acuminous business man and had he undertaken to accept the trust and operate the farm under it, he would have kept a separate set of books and reported to the court or to the heirs yearly as he would have been required to do. The conclusion cannot be escaped that he declined for that reason as well as others. He had business judgment enough and experience in farming operations to know it would require money and equipment, as well as a lot of his time, to carry out the trust.

It therefore necessarily follows that plaintiffs are not entitled to recover if it should be found that the conveyance from Graham to V. A. & Sarah Stein created an estate as tenants in common because of the consent of the cotenants to rent the place to Lawrence and of his declination to act as trustee.

I have weighed all the testimony carefully and have not overlooked the fact that there are many weak places in Lawrence's testimony. However, I am impressed with his honesty even though when he was

about to be sued by one of his employees for an injury received at the gin he executed a mortgage to V. A. Stein on all his property purporting to cover an indebtedness for fifteen thousand dollars which in fact he did not owe and which would have been a fraudulent conveyance as to the injured employee. The claim for the injury was settled and on the same day the mortgage was canceled. Notwithstanding this act, he dealt fairly with all his family as is shown by this record. The burden of proof rested upon Lawrence to prove that he was operating Little Hope as a landlord and not as trustee and he met this burden.

In short I make the following finding of facts and conclusions of law:

1. In Feb. 1904, one Graham conveyed Little Hope to the Steins in the following pertinent language: "Benjamin Graham * * * does * * * transfer and convey unto Victor A. Stein and Sarah Stein * * * as joint tenants and not as tenants in common."

2. Victor and Sarah Stein at the time of the conveyance were husband and wife. They immediately went into possession of the land and remained thereon as their homestead until the death of each one. He died in 1933 and she died in 1935.

3. Sarah Stein continued to occupy the land from the time of the death of V. A. Stein until the time of her death and was living on the property at the time of her death. During her lifetime Lawrence Stein rented the property from her and paid her $3000.00 per year rent.

4. Sarah Stein made a will but it was never admitted to probate or proven and therefore conveyed no interest in the property in so far as this record is concerned.

5. Immediately after the death of Sarah Stein the plaintiffs along with all the other heirs except Dr. Wolfe made an agreement with Lawrence Stein that he would rent from them their interest in Little Hope and would pay $3000.00 per year for the place. He thereupon took charge of the place and farmed it and paid them the agreed rent, some by cash, and some by check, for all the years up until the filing of this suit, and

has paid the plaintiffs all the rent he owes them under his agreement. He declined to act as trustee under the will of V. A. Stein and advised all the interested parties that he would not act as trustee.

6. There are no facts or conduct that would amount to a ratification of Lawrence's acting under the trust, nor that would amount to an estoppel.

7. All facts found in the foregoing opinion are adopted here.

Conclusions of Law.

The law has been fully stated in the opinion and is reaffirmed here. The plaintiffs are not entitled to recover.

Order may be drawn in accord herewith, dismissing the complaint at the cost of plaintiffs.