THE INTERNATIONAL WOOD COMPANY

*vs.*

THE NATIONAL ASSURANCE COMPANY OF IRELAND.

Cumberland.     Opinion December 24, 1904.

*Insurance Policy.     Judicial Sale.     Decree of Annulment.*

To avoid a policy of fire insurance that contains the provision that it shall be void "if without the consent in writing or in print of the company said property should be sold, or this policy assigned," etc., the sale must be such as passed title to the property.

In cases of sale of personal property between individuals where no question affecting the rights of other parties exists, the title may pass without delivery of the property, but the validity of judicial sales depends upon somewhat different rules. In judicial sales of personal property, the execution and delivery of instruments of conveyance are necessary as a part of the requisites of the sales.

The failure of the officer of the court to comply with statutory provisions or with the decree of an equity court ordering and confirming a sale, renders it non-judicial and void.

A decree of annulment of a judicial sale, based upon the finding as a matter of fact that the sale had not been completed and that the title had not passed determines the status of the title as between the parties to the sale and its validity cannot be impeached collaterally.

On report.     Judgment for plaintiff.

Action of assumpsit to recover loss under a policy of fire insurance, issued by the defendant.

At the hearing in the Superior Court for Cumberland County, by agreement of the parties the evidence was reported to the Law Court to render such judgment upon so much of the evidence as is competent and legally admissible, as the rights of the parties may require.

The case is sufficiently stated in the opinion.

*Benjamin Thompson,* for plaintiff.

*Leslie C. Cornish and Norman L. Bassett,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

PEABODY, J.   This action is brought to recover the sum of $1000 the amount covered by policy of fire insurance issued by the defendant company upon the personal property of the plaintiff company, consisting of mill buildings and machinery on leased land located at Lakewood in the county of Aroostook, State of Maine.   The case comes before this court on report.

The mill plant was installed for the manufacture of Veneer by the predecessor of the plaintiff, and extensive improvements were made after the purchase by the plaintiff so that it stood upon its books September 1, 1901, at $172,427.

On the 29th day of December, 1900, William W. Mitchell of Portland, Maine, was appointed receiver of the plaintiff under proceedings in suit instituted by the stockholders.   The receiver through an agent of the defendant company placed the policy in suit and six others originally aggregating the sum of $30,000.   On March 5th, 1901, he received authority by decree of the court to sell the property and assets and make report of the sale to the court for confirmation. On the 16th day of September, 1901, he sold the property insured at auction for $7000 to George F. Duncan of Portland, Maine, who deposited the sum of $1000 according to the conditions of the sale. On the 17th day of September, 1901, the sale was confirmed by the court.   On the same date the receiver executed the bill of sale to Mr. Duncan.   Duncan never went to the mill but the receiver continued in possession and operated the mill up to the first of November, 1901, when it was leased by him and operated by his tenants until the 9th day of November, 1901, when the mill building and contents were entirely destroyed by fire.   The receiver furnished the defendant a proof of the loss December 13, 1901.

Previous to the loss by fire, at the request of the receiver made to the agent who negotiated the policies, the total insurance was reduced to $15,000 and the policy in suit was modified so as to cover $400 on the buildings, $466.67 on the machinery and $133.33 on lumber and material.

Upon his application to the equity court the receiver was given permission to bring suit against the several insurance companies, and the suit under consideration was commenced April 3, 1902.

On the 28th day of November, 1902, on the petition of Duncan, the order and decree confirming the sale to him were vacated and rescinded and the $1000 paid by him to the receiver was ordered to be repaid.

The policy is in the Maine Standard form and contains the provision that it shall be void, "If without the consent in writing or in print of the company, said property should be sold, or this policy assigned," etc. Our court has held that such a provision is valid, *Waterhouse* v. *Gloucester Fire Insurance Company*, 69 Maine, 409. So the case depends primarily upon the legal effect on the policy of the receiver's sale and its confirmation by the court.

To avoid the policy under this provision the sale must be such as passed title in the property insured, *Orrell* v. *Hampden Fire Insurance Company*, 13 Gray, 431; *Pitney* v. *Glen Falls Insurance Company*, 65 N. Y. 6; *Brabin* v. *Hyde*, 32 N. Y. 519; *Boston & Salem Ice Company* v. *Royal Insurance Company*, 12 Allen, 381. There was no actual delivery of possession by the receiver to Duncan. In cases of the sale of personal property between individuals where there is no question in relation to the statute of frauds or rights of subsequent bona fide purchasers, or of attaching creditors without notice, the title may pass without delivery of the property. *Dixon* v. *Yates*, 5 B. & Ad. 313; *Morse* v. *Sherman*, 106 Mass. 430; *Cummings* v. *Gilman*, 90 Maine 524. But the validity of judicial sales depends upon somewhat different rules. By decree of the court the receiver was authorized and empowered to proceed to sell all the assets of the International Wood Company at public auction to the highest bidder, giving such notice of the time and place of the sale as to the court should seem reasonable and proper. The decree gave specific directions as to the notice of sale, that the sale should be subject to the approval of the court, that the receiver should make report to the court for confirmation and hold the proceeds subject to the further order of court. The auction sale was held September 16, 1901, according to the required notice, and the sale was made to Duncan,

he being the highest and only bidder.   The receiver filed his report of the sale and it was confirmed by a decree of the court which, after reciting facts upon which it was based concludes as follows: "Ordered, Adjudged and Decreed that said sale be approved and confirmed· and that said William W. Mitchell, Receiver, is authorized and directed to make, execute and deliver to said George F. Duncan all necessary bills of sale and assignments to carry said sale into complete effect, upon the payment to him by said Duncan of the amount of the purchase price according to the terms of sale."   A bill of sale was prepared and executed by the receiver to Duncan on the day of the confirmation, which the evidence shows may have been handed to Duncan, but if so it was not retained, and no further payment of the purchase price, was made by him.   It is claimed by the defendant that thus everything had been done to entitle the purchaser to the property and the receiver to the purchase .price.   But we do not think that this is the legal result of the transaction.   The authorities hold that until there has been a delivery of a deed of real estate sold at a judicial sale the title did not pass.   *Slowhidsky* v. *Insurance Company,* 53 Neb. 816; *Manhattan Insurance Company* v. *Stein,* 5 Bush. (Ky.) 652; *Haight* v. *Insurance Company,* 92 N. Y. 51; *Marts* v. *Insurance Company,* 44 N. Y. Law, 478.   In these cases it may be assumed that the converse would be true, that the title would pass by the delivery of the deed and a compliance with the conditions of the sale.   In judicial sales of personal property the execution of instruments of conveyance is a part of the requisites of the sales.   The failure of the officer of the court to comply with statutory provisions or with the decree of an equity court ordering and confirming a sale would render it non-judicial.   Freeman on Void Judicial Sales, Secs. 43, 44; *Mason* v. *Ham,* 36 Maine, 573.

There is some conflict of testimony relative to the fact of delivery of the bill of sale to Duncan.   If made at all it must have been only provisional.   It was not such a delivery as was contemplated and directed in the confirmatory order.   It was to be made by the receiver simultaneously with the payment to him of the price which he was to hold for further order of the court.   Such delivery only was authorized or could have any legal effect to pass the title.   This

conclusion would negative a completed sale; and a mere executory contract or inchoate sale resulting from the auction and the deposit of money by the bidder would not make the policy void under the forfeiture clause. The effect of the decree of the court vacating and rescinding the order of sale may be briefly considered. In *Woodard* v. *Bullard,* 27 N. J. Eq. 508, the court say, "The right of the Court of Chancery to set aside sales made by its officers and restrain the delivery of the deeds to purchasers cannot be doubted upon a proper case made. *Campbell* v. *Gardner,* 11 N. J. Eq. 423. In *Collier* v. *Whipple,* 13 Wendell, 224, where the deed had been delivered by the receiver to the purchaser the order of the chancellor for a resale, on appeal to the court of errors, was affirmed. Mr. Justice Nelson in delivering the opinion of the court said: "As to the deed it was taken subject to the jurisdiction of the Chancellor over the sale."

The decree of annulment was based upon the finding as matter of fact, that the sale of Duncan had not been completed, that the title did not vest in him; and upon that ground the money paid by him at the time of making his bid was ordered returned to him. This certainly would determine the status of the title between the parties to the sale, and we think the validity of the decree cannot be impeached collaterally by the insurance company in this case. *Brande* v. *Bond,* 63 Wis. 140; *Libby* v. *Rosekrans,* 55 Barbour, 202.

The plaintiff is entitled to recover the proportion of the loss sustained which the sum insured by the policy in suit, $1000, bears to the whole amount insured thereon, $15,000. The evidence shows that the loss exceeded the whole amount insured.

*Judgment for plaintiff for $1000 and interest*
*thereon from February 11, 1902.*