## . OSLER V. ATLAS ASSUR. CO.

### [90 South. 185. No. 22239.]

1. INSURANCE. *Tornado policy providing it should be void for change of interest is not void where change takes place after destruction by tornado.*

   A provision in a tornado insurance policy on a house that the policy shall be void "if any change take place in the interest or title of the subject of this insurance" is not violated where the insured does not convey or contract in writing and deliver the writing before the house is destroyed by the tornado.

2. INSURANCE. *Where owner, orally agreeing to sell house and put purchaser in possession, executed, but did not deliver, deed before loss, there was no "change of interest or title."*

   In such case, where the insured orally agrees to sell the house, executes a deed, and puts the purchaser in possession, but does not deliver the deed nor execute and deliver any other writing of the sale before loss, there is no "change of interest or title" in the property as contemplated by the said provision, under sections 2763 and 4775, Code 1906 (sections 2267 and 3119, Hemingway's Code).

APPEAL from circuit court of Lauderdale county.

HON. J. D. FATHEREE, Judge.

Action by R. P. Osler against the Atlas Assurance Company on a tornado policy. Peremptory instruction for the defendant, and from the judgment thereon the plaintiff appeal. Reversed, and judgment rendered for plaintiff.

*Martin Miller,* for appellant.

The decisions in this case, under the pleadings narrows itself down to the answer of the following clauses in the policy. Did any change other than by death of the insured take place in the interest or title of the property insured? If this is answered affirmatively, appellant is not entitled to recover. If not, appellant is entitled to recover.

Nowhere was it shown in the record that Miller even executed promisory notes for the payment of the unpaid pur-

chase price of the property. Nowhere is it contended that Osler assigned the policy in question to Miller.

In considering the propriety of the peremptory instructions given in favor of the defendant, this court will view the testimony of the case most strongly in favor of the appellant, and he will be given the benefit of all reasonable references to be deduced from this testimony and all the facts in evidence will be considered most strongly against the defendant. *Whitney* v. *Cook,* 53 Miss. 551; *Farmer* v. *Telephone Company,* 86 Miss. 55, 38 So. 775; *State* v. *Spengler,* 74 Miss. 129; *Railroad* v. *Boehms,* 70 Miss. 11; *Hines* v. *Moore,* 87 So. 1.

Were the agreements between Osler and Miller such that either of them could enforce agreements in a court of law or equity? Section 4775 and subdivision (c) thereunder, of the Code of 1906, provides that an action shall not be brought whereby to charge the defendant or other party upon any contract for the sale of lands, tenements or hereditaments or the making of any lease thereof, for a longer period than one year, unless the contract is in writing.

From the outset, our court, in construing this statute, has construed it strictly. *McMaster* v. *Insurance Company,* 55 Hun. 222, 232; *Garner* v. *Milwaukee Mechanics Insurance Company,* 73 Kan. 127, 4 L. R. A. (N. S.) —; *Snyder* v. *Insurance Company,* 57 N. J. L. 544, 59 A. S. R. 625; *Dover Glassworks Company* v. *Insurance Company,* 1 Mary (Del.) 32; *Hoffman* v. *Insurance Company,* 32 N. Y. 405.

*O. S. Street,* for appellee.

Counsel for appellant in this court plants himself squarely on the statute of frauds, and has amassed a great wealth of cases to sustain his position, but it is significant that he has cited no case whose facts are similar to this. No case coming under the observation of this writer has ever held that an insured may recover on an insurance policy the value of the policy where the proof shows as in this case,

that he has sold the property to another and received four-fifths of the consideration and is holding his vendee for the payment of the other one-fifth. Besides, it is respectfully submitted that our statute of frauds is not as important in the correct determination of this controversy as counsel seems to think.

In a contest between Osler and Miller over the contract of purchase and sale, the statute of frauds might properly be raised, and it may be that in such a controversy there would be some merit in counsel's contention, but, even in such a contest, the able and learned counsel would represent his brother, Joe Miller, no doubt, against his present client, and the chances are largely that he would convince the court that the sale of the property by Osler, to his brother, was not in violation of the statute of frauds, and it is safe to predict that he would come out of court with a decree in his brother's favor, requiring Osler to deliver the deed which he has already prepared, and already delivered one time, at least, for the purpose of aiding Miller to collect two thousand, five hundred dollars on his policy in the Home Insurance Company. Our statute of frauds may be invoked only by one of the parties in a contest with the other party in a controversy between them. A mere reading of the statute will demonstrate that it is intended to operate only as against the parties to the contract condemned by it.

Certain contracts to be in writing. An action shall not be brought whereby to charge a defendant, or other party. (c) Upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer term than one year: "Unless the promise or agreement upon which such action may be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized." Code 1906, section 4775; Hemingway's Code, section 3119.

It is apparent, of course, that the present suit is not upon any contract for the sale of lands, tenements or hereditaments, and the phrase unless the promise or agreement upon which such action may be brought, is in writing, etc., eliminates the statute of frauds from this controversy, even though the courts sometime discuss the effect of the statute of frauds in connection with the question of forfeiture of insurance policies; but it is respectfully urged that the statute has no place in such a controversy.

Our supreme court has held more than once that the statute of frauds is personal to the parties to the contract and may not be injected collaterally.

Judge WOODS, in *Grisham* v. *Lutric & Chandler*, 76 Miss., at page 447, says:

"While a verbal contract for the lease of lands for more than one year is nonenforceable, because within the statute of frauds; still the statute does not declare it void, but only declares that it, the contract, shall be nonenforceable in an action  brought to charge a defendant or other party. But the present suit is not one brought against the defendants to enforce a verbal contract of lease for more than one year.   It is not a suit brought by either of the parties to such lease against the other party thereto.   The parties to the contract are neither asserting any .claim based upon it,, nor defending any action because the contract is within the statute of frauds.   The attack upon the contract is made by way of defense in an independent proceeding between strangers to that contract, and it would appear to be well settled that an attack by a stranger, in a collateral proceeding, is not allowable.   If the parties to the contract, voidable at the election of either of them, which has been performed, do not repudiate it, third persons, having no interest in it, cannot be heard to question it in any collateral controversy.   *Chaffe* v. *Benoit*, 60 Miss. 39.   It seems equally well settled that the statute of frauds as a defense, is personal to the parties to the contract, and is not available to a stranger to the contract in a collateral proceeding.

Browne on the Statute of Frauds, sec. 135; Reed on the Statute of Frauds, sec. 651.

It follows, therefore, that in a controversy between R. P. Osler and the Atlas Assurance Company, Osler cannot claim that Miller would seek to avail himself of the statute of frauds in a contest that might be brought against him by Osler to enforce payment for the property. In such suit, Miller would have the right to waive the defense of the statute of frauds, and in this proceeding Osler cannot take any benefit of the protection which such party, (Miller) could claim in an action brought upon it himself.

Aside from all of this, however, the undisputed evidence of the witness, Lloyd, is that Miller actually had a deed in his possession duly signed and acknowledged by Osler, conveying to Miller this property. When Miller desired to collect from the Home Insurance Company the two thou sand, five hundred dollars, tornado insurance on this same property, which he carried, as owner of the property it seems to have been easy enough for him to produce a deed from Osler, and to show to the adjuster, Mr. Lloyd, that he and not Osler, was the real owner of the property; but it happens that, in the present case before Osler can recover on his policy, he must repudiate the sale to Miller and it serves his purpose to endeavor to show that he, and not Miller, is the owner. It seems that Miller and Osler are playing a pretty game in connection with the ownership of this property; but it is not believed that the court will aid Mr. Osler in now collecting a policy on the property after he aided Miller in proving ownership in order that Miller might collect his policy. A delivery of the deed to Miller for such a purpose was an effectual delivery to him for all purposes, and Osler is estopped to claim otherwise. Our court, in *McAllister* v. *Mitchner*, 67 Miss. 672, held that a deed delivered to the grantee is not an escrow, and any verbal agreement qualifying the effect of such delivery is void. And, in *Wall* v. *Wall*, 30 Miss. 91, it was held that as between grantor and grantee actual manuel delivery of a deed is not necessary, and its actual retention in the

possession of the grantor, if he intend it to be considered as executed and delivered, will not invalidate it for want of delivery.

Osler himself testified that he was holding the deed merely as security for the balance due him by Miller, and that when this was paid he would deliver the deed, and the transfer of the title would relate back to the date of the deed, before the cyclone. Nowhere in his testimony does he say anything about the contract between he and Miller being void under the statute of frauds. He is merely trying to make himself secure, and is not seeking to avoid his contract with Miller. He is, in effect, a mortgagee, and his retention of title operates as an equitable mortgage. *Strickland* v. *Kirk,* 51 Miss. 795.

Had change in interest taken place? At the time the policy was written Osler was the sole owner. At the time of the tornado, Miller was in possession and had paid eleven hundred dollars on the purchase price, and at the time of the trial, he had paid three thousand, six hundred dollars on the purchase price. The Kansas court seems to be alone in its construction of the word interest, and I have been unable to find any other decisions supporting the doctrine announced in the decision of the Kansas court, cited, by counsel for appellant. Miller agreed to pay four thousand, five hundred dollars for the property. He paid three thousand, six hundred dollars and owed nine hundred dollars. So, to an ordinary mind, Giving the word interest its usual, every day meaning, Miller had a four-fifths interest in the property, and Osler a one-fifth interest also. Was there, then a change in interest, in the property? It changed from five-fifths to one-fifth. Osler made the contract of insurance with the insurance company and he is bound by it. It states that if there is a change in interest or title the policy will be void. This clause, in one form or another, has been upheld by all of the court. It is not a new question in Mississippi. *Rosenstock* v. *Mississippi Home,* 82 Miss. 674.

Counsel's charge, in his brief, therefore, that we are standing upon a technicality is not well taken. In truth,

the boot is on the other foot.  Appellee is standing upon the contract, whereas, the appellant is trying to inject the statute of frauds collaterally, not to avoid his contract with Miller, but he is trying to throw a technical wrench in the wheels of justice, by claiming that, though he did sell the property to Miller and has received four-fifths of his money, and expects Miller to pay the other one-fifth, and has stood by and aided Miller to collect money from the Insurance company on the theory that the property was Miller's still, when it comes to getting money in another law suit from another company, then the property is technically his and not Miller's a blowing of hot and a blowing of cold, a playing of fast and loose, so however much might be said of the strength of appellee's technical, legal position, not much can be said of its moral worth.

It would serve no useful purpose to analyze the many cases cited by counsel, none of them are similar to the one here.  Law is based upon right and justice, and feeling that these are, in this case, entirely on the side of appellee, it is confidently hoped that the judgment of the lower court will be affirmed.

HOLDEN, J., delivered the opinion of the court.

The appellant, Osler, sued the appellee, Assurance Company, on a tornado policy for one thousand dollars on a house destroyed by a cyclone of April 20, 1920; a peremptory instruction to find for the defendant was granted in the lower court, from which judgment this appeal is prosecuted.

The tornado insurance policy among other things provides that—"In case of any fraud, false swearing, misrepresentation, or concealment by the insured touching any matter relating to this insurance or the subject thereof; or if any change, other than by the death of the insured, take place in the interest or title of the subject of this insurance, . . . this entire policy shall be void."

At the trial the defendant Assurance Company gave notice of and relied upon this provision of the policy as

a defense to the action, on the ground that there had been a change in the interest or title of the property that was destroyed after the issuance of the policy and before the tornado occurred. The plaintiff below contended that there was no change in the interest or title of the insured property.

The proof in the record, which is not materially contradicted, shows that appellant, Osler, before the destruction of the property, put one Joe Miller in possession of the property under an agreement to sell it to him for the sum of four thousand, five hundred dollars. Miller paying one thousand, one hundred dollars cash to Osler on the agreed purchase price; that appellant, Osler, had executed a deed to Miller to the property, which he did not deliver, but was holding for the purpose of delivering to Miller as soon as the purchase price of the property had been fully paid.

At the time the property was destroyed by the tornado, and at which time the cause of action under the policy accrued, the deed had not been delivered, nor had there been executed and delivered any contract in writing between Osler and Miller with reference to the purchase of the property.

There is considerable argument here by counsel for the appellee regarding an alleged delivery of the deed after the property was destroyed and the right of action had accrued; and it is also argued that a policy by another tornado insurance company was issued and paid to Miller for the loss of this same property. But we do not think it material as to anything that happened after the loss occurred and the right of action arose. The main point presented in this appeal, and which is decisive of the case, is whether or not the evidence in the case shows that the provision in the policy against a "change of interest or title" in the property had been violated by the insured before loss.

It seems clear to us that the proof in the case wholly fails to show there was any change in the interest or title

of the property after the issuance of the policy and before the loss occurred. A conveyance or contract conveying "any interest" in land or passing any title thereto must be in writing under section 2763, Code of 1906 (section 2267, Hemingway's Code), and also section 4775, Code of 1906 (section 3119, Hemingway's Code.) There was no interest or title conveyed or passed by writing in this case; therefore, there was no "change in the interest or title" of the property destroyed, as provided in the clause of the policy.

The evident meaning of the provision, which is to be construed most strongly against the insurance company who claims a forfeiture, is that, if there is a change in the interest— that is, the ownership—of the property the policy shall be thereby vitiated. But in this case the ownership, or any interest in it, in the land could not be changed except it be done in writing and delivered. Under the proof in this record we do not think, though unnecessary to decide, that specific performance could have been enforced by Miller, because of the failure to contract and deliver in writing. But, if mistaken in this, still it seems plain to us that no change of interest or title, as provided and contemplated in the clause of the policy, took place in this case. *Erb* v. *German A. Ins. Co.*, 98 Iowa, 606, 67 N. W. 583, 40 L. R. A. 845; *Aetna Ins. Co.* v. *Aston*, 123 Va. 327, 96 S. E. 772; *Moseley* v. *Northwestern Ins. Co.*, 109 Mo. App. 464, 84 S. W. 1000; *Garner* v. *Milwaukee Mechanics' Ins. Co.*, 73 Kan. 127, 84 Pac. 717, 4 L. R. A. (N. S.) 654, 117 Am. St. Rep. 460, 9 Ann. Cas. 459; *International Wood Co.* v. *Assurance Co.*, 99 Me. 415, 59 Atl. 544, 105 Am. St. Rep. 288, 2 Ann. Cas. 356.

For the reason given, we decide that the lower court erred in granting a peremptory instruction for the appellee Insurance Company, and we hold that the appellant, Osler, was entitled to a peremptory instruction to find for the amount sued for.

*Reversed, and judgment here for appellant.*