## Smith et al. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, et al.

(Decided May 12, 1931.)

HENRY G. BEDINGER and DAVID R. CASTLEMAN for appellants.

F. M. DRAKE and ROBERT F. VAUGHN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Floyd G. Smith was the owner of a dwelling house and garage on south First street in Louisville. On Jan-

uary 26, 1927, the National Union Fire Insurance Company issued to him a fire and tornado policy insuring his residence in the sum of $6,000 and his garage in the sum of $300. Before the expiration of the policy, the dwelling house was injured by a fire in the amount of $1,740. In this action to recover on the policy, the company defended on the ground that Smith had no insurable interest. He replied with a plea of waiver. At the conclusion of his evidence, the trial court directed a verdict in favor of the company. He appeals.

The facts developed on the trial are these: The insurance company issued the policy through its agent, the Louisville Trust Company. The trust company had written authority to countersign, issue, and renew policies of insurance, to consent to assignments and transfers thereof, and to collect premiums for transmission to the company. The policy contained the following provision:

> "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise."

At the time the policy was written, the trust company held a mortgage on the property insured and two other lots to secure an indebtedness of $5,000. After issuing the policy, it attached a mortgage loss clause in its favor, and retained the policy in its possession. Smith being in default, the trust company, in April, 1927, brought suit against him to enforce its mortgage lien. On being served with summons, Smith informed the trust company. Judgment was procured, and the property was ordered sold. The sale was had on July 25, 1927. The residence property brought $5,700, which, being more than the debt, interest and costs, made it unnecessary to sell the two lots. Though the purchaser did not execute bond, or take any steps to comply with his bid, the sale was confirmed on October 8, 1927. Thereafter rule was issued against the purchaser to require him to comply with the terms of his bid. On February 27, 1928, a resale was ordered. At that sale the highest bid for the residence property was $3,250.

It and the lots were then sold as a whole, and brought $5,050. Subsequently the sale was confirmed, and the trust company's debt and costs paid in full. After the first fire, Smith, thinking that the sale was valid, went to Mr. Gates, treasurer of the trust company, and asked for a return of his unearned premium. He was referred by Mr. Gates to the insurance department, where the unearned premiums were calculated. He then went back to Mr. Gates, and says that the following conversation occurred:

"When I returned to Mr. Gates he told me that he talked to some of the higher ups and they could not cancel that because they did not have no protection on the property; if these people did not comply with the terms of the sale the property would be ours—come back to us and they had to hold the insurance policy for protection—their protection as well as mine. That is what he explained to me."

On the other hand, Mr. Gates said: "I told him (Smith) we would not cancel those policies, that our lien was still in effect there, and we had not collected our money and we wanted the protection of the lost clause of the policies and would not cancel them." He further stated that they had not collected their money "because of the disability of the purchaser complying with his purchase agreement." He also testified that the purchaser at the first sale failed to comply with the terms of the sale, and that was the reason he told Mr. Smith that they could not cancel the policies. It was also shown that the trust company attached to the policy a vacancy permit good from October 29 to December 29, 1927, and a subsequent vacancy permit good from December 29, 1929, to February 29, 1928, and that the premium for each of these permits was $5.31, and that both were charged to Smith's account.

The trial court gave the directed verdict on the ground that Smith had no insurable interest at the time of the fire. Under our statutes, the legal title to property sold at decretal sale does not pass to the purchaser until it is conveyed to him by the commissioner under proper order of the court (sections 396, 397, and 398, Civil Code of Practice; Cockrill v. Louisville & N. R. Co., 176 Ky. 148, 195 S. W. 435), and there is authority for the position that the owner has an insurable interest until the legal title passes (International Wood Co. v.

National Assurance Co., 99 Me. 415, 59 A. 544, 105 Am. St. Rep. 288, 2 Ann. Cas. 356). That, however, is not the rule in this state. On the contrary, the rule is that a purchaser at a judicial sale, in some circumstances, even before a deed is made, acquires the equitable title, and, if the property be destroyed by fire, the loss falls on him.

The question to be determined is, When and at what stage of the proceeding does the equitable title pass? The rule is sometimes broadly stated that confirmation of a judicial sale vests the purchaser with the equitable title and brings about such a change in the title or interest of the insured as to avoid a fire insurance policy containing a provision against change in interest or title. Messer v. American Eagle Fire Ins. Co., 227 Ky. 3, 12 S. W. (2d) 358. That is true where the purchaser has complied with the terms of sale and paid cash or executed bonds, if bonds were required. As confirmatory of this view we held in Cook's Adm'r v. Franklin Fire Ins. Co., 224 Ky. 360, 6 S. W. (2d) 477, that a provision in a policy against change of interest, title, or possession in the subject of insurance, whether by legal process or judgment or voluntary act of insured, was avoided by acceptance of bid and purchase-money bond of purchasers at judicial sale. It will thus be seen that the controlling element is not the confirmation, but the purchaser's compliance with the terms of the sale. There is sound reason for this view. The owner is entitled either to his interest in the property or a substitute therefor, and this substitute must be either cash, if cash payment be permitted, or purchase-money bonds, if such bonds be required. In this case, the purchaser did not execute the required bonds either before or after the confirmation of the sale, and at the time of the fire had taken no steps whatever to comply with the terms of his bid. In the circumstances, the mere order of confirmation did not invest the purchaser with title, or effect a change in the title or interest of Smith. It follows that Smith had an insurable interest at the time of the fire, and it becomes unnecessary to discuss the question of waiver. As the debt of the insurance company was paid out of the proceeds of the sale of the property insured and the two improved lots, it is clear that Smith sustained the loss due to the fire. It follows that no peremptory should have been given on the ground that Smith had no interest in the property.

We do not pass on the question of waiver of proof of loss, since on another trial the company will be permitted to offer evidence on that question, if it so desires.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.