## Overstreet et al. v. Grinstead's Adm'r et al.

May 14, 1940.

James M. Gilbert, Judge.

74

Beckham Overstreet and Walter B. Smith for appellant.

Davis W. Edwards, W. W. Downing and E. B. Wilson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

In a suit pending in the Bell Circuit Court to settle the estate of R. H. Grinstead, deceased, a number of parcels of real estate in Louisville were ordered to be sold by the master commissioner. On December 3, 1935, the appellant herein, Mrs. Elsie E. Overstreet, wife of Beckham Overstreet, of Louisville, made the highest bid of $760 on a certain lot. It was appraised at $1,780. After delay of about two months she executed five purchase money bonds for $152 each, payable six months apart. The first bond was credited by an initial payment of $76, and the balance paid after maturity. The second bond due December 3, 1936, was not paid. The report of sale was never confirmed.

A rule was issued against Mrs. Overstreet to show cause why the property should not be re-sold for her failure to pay that bond and interest. It was served on her on April 19, 1937. No response having been filed, the rule was made absolute on April 23d, and re-sale of the property ordered with judgment against Mrs. Overstreet for any deficiency. The re-sale was made by the master commissioner on May 18, 1937, and A. E. Dott was reported as having made the highest bid of $1600. A deposit of $160 was made for him by Mr. Overstreet to assure compliance with the terms of the sale. But nothing more was done. A rule was issued against Dott to show cause why he had not complied and why the property should not be re-sold. The motion recited that Dott had taken possession of the property and paid no rent, and he was ruled also to show cause why he should not pay. Dott filed no response. Mrs. Overstreet filed an intervening petition and response setting up grounds upon which vacation of the judgment of April 23, 1937,

and all subsequent proceedings was prayed. Dott having failed to respond the rule was made absolute and the administrator was ordered to take immediate charge of the property. Issue was joined on the intervening petition, and upon the evidence the court adjudged, (1) that the costs of sale be taken out of the $160 deposited by or for Dott; (2) the administrator of the Grinstead heirs recover rent from the day of sale; and (3) that the intervening petition of Mrs. Overstreet be dismissed. She appeals.

The judgment ordering a re-sale was final and could be set aside only upon some ground authorized by the Civil Code of Practice. The intervening petition specifically relied upon charges of (1) fraud practiced by the successful party (Section 518, Subsection 4); (2) casualty or misfortune preventing her from appearing and defending (Section 518, Subsection 7); (3) misconduct of the prevailing party or his attorney (Section 340, Subsection 2); and (4) accident or surprise which ordinary prudence could not guard against (Section 340, Subsection 3). The last two grounds were apparently thrown in for good measure or bad, since Section 342 of the Code expressly declares that a motion for a new trial based thereon must be filed within three days after rendition of a verdict or decision.

The second ground rests upon the paralyzed business conditions caused by the flooding of the greater part of Louisville in January, 1937. Mr. Overstreet, who transacted all the business in his wife's name, describes those conditions in much detail and professes to have had some kind of foreknowledge before Christmas as to what would happen. He was looking after forty pieces of property for his wife, and that business, together with mental disturbance over the great distress prevailing throughout the city, is submitted as sufficient ground for not having paid the bond when it was due on December 3, 1936, and for not having responded to the rule served on Mrs. Overstreet on April 19, 1937. The proof is that the danger from the flood did not arise until after January 15th, the crest being on the 21st or 22d, and that business and professional conditions had become substantially normal by March 1st at the latest. This case was pending in the Bell Circuit Court and not in Louisville. We think it apparent that the difficulties arose not, as appellant contends, from vis major or

God's act, but arose from Mr. Overstreet's failure to act. Clearly, therefore, the second ground for setting aside the judgment is without merit.

In respect to the first ground, we cannot refrain from observing that Mr. Overstreet's abuse in his brief is not only unjustified but unbecoming. It weakens rather than helps his argument. Judge Davis W. Edwards, a former chancellor of the Jefferson Circuit Court, represented the Grinstead estate in Louisville. The essence of Mr. Overstreet's testimony material and relevant to this issue is that after the rule had been served he went to Judge Edwards' office to obtain a copy of the motion and told him that he was going to file a response pleading the act of God as having prevented payment of the bond. To this Judge Edwards responded: "Don't do that; just let the rule go and be made absolute and I will agree that in the event this is paid—say in the next thirty days—why, we will have the order set aside and the sale confirmed and a deed made to Mrs. Overstreet." Overstreet having assured Judge Edwards that the bond would be paid, it was agreed that no response would be filed and that Overstreet would pay the bond and all past due interest. Two weeks later Overstreet says he called upon Judge Edwards with the idea of paying off what was due when the latter demanded $95 more as rent of the property, Overstreet having taken possession shortly after bidding on it. He contended that the Trust Company had agreed to settle this controversy for $50 but Edwards refused that sum, saying: "I have got you now; you are going to pay us $95.00; we are not going to accept any money for the bond and interest unless it is paid." Within three or four days of the second sale, but not until then, Overstreet made a tender of the bond and interest. By that time the judgment had not only become final but the re-sale had been advertised the proper period.

Admittedly, without any intention of complying with the terms of the sale and in order to get the matter in friendly hands, Overstreet employed Dott, a real estate agent, to bid in the property at the re-sale on May 18th for his wife for $1,600. However, he did pay the deposit of $160 which he says he advanced for his wife. He testified that this was done because sometimes it is necessary "to fight the devil with fire."

Judge Edwards testified to the repeated promises of Overstreet during December and January to pay the past due bond. When Overstreet suggested that he was going to file a response to the rule, Edwards made no objection. Then he was asked by Overstreet if he could pay the bond thereafter. In response Judge Edwards testified:

> "I told him that if before anything was done toward a sale he paid the money due and moved the court to set aside the rule I believed the court would do so, and that I would not make any objection if it was done before the commissioner was directed to make a sale."

According to Judge Edwards it was after the sale bills had been posted and not before that Overstreet called on him to learn what was due. He ascertained the amount which included $95 rent, and so advised Mr. Overstreet. He then claimed that the Trust Company had agreed on $50. Upon inquiry, the company's trust officer contradicted him. Judge Edwards denied having agreed to set the order aside if the bond should be paid in thirty days, and denied saying, "I have got you now."

The sharp difference between the gentlemen is whether there was an absolute agreement that a final judgment should go and be set aside by the payment of the bond at any time, or perhaps in thirty days, or if a motion to set such judgment aside should be made before a re-sale was ordered there would be no objection entered. We think the circumstances sustain Judge Edwards' version of this conversation. According to Mr. Overstreet, Judge Edwards, as counsel for the heirs, had shylocked him during the anticipation and pendency of the flood, that is from December 3, 1936, and then when action had been taken in court to require a valid excuse for non-payment, the same attorney had freely consented to an indefinite extension of time. It is not consistent. We do not overlook the charge that this was a scheme on the part of Judge Edwards. Nor do we overlook the omission of Overstreet that he was willing to risk the consequences of losing his bargain which he, as a lawyer, may be assumed to have appreciated for so slight a difference as $45 in rent claimed, a matter which could have been adjusted later by the court if necessary.

Nor his failure to tender payment until four days of the sale. Mr. Overstreet's boast of his subsequent trifling with the court by having blocked the re-sale in order to get even with Judge Edwards instead of having timely pursued a proper legal course must be taken into consideration.

The appellant relies on Johnson v. General Lumber Company, 255 Ky. 734, 75 S. W. (2d) 357, in which we construed the ground of fraud practiced by a successful party in litigation as the basis for reopening a case under Section 519, Subsection 4, Civil Code of Practice, to mean a fraud upon his adversary's rights which resulted in having thrown him off guard, or otherwise prevented him from defending, provided, however, that the losing party was not himself negligent and that he showed he had a prima facie valid defense. The case at bar is different on the facts from the Johnson case. If it be granted, for the sake of argument, that Mr. Overstreet's understanding as to what was said by Judge Edwards was well-founded, he did not establish the other essential elements. We think he was negligent in delaying tender of payment of the bond, and that he did not show that he had a meritorious defense. Moreover, we think it was required that a proper tender of the amount due should have been made in court or in connection with the pleading seeking a new trial.

The property involved is in a slum clearance district of Louisville, and at the time of the sale in December, 1935, the buildings were dilapidated and in an almost untenantable condition. Mr. Overstreet promptly took possession of the property. He says it was to protect it from vandals. The right of redemption within 12 months was recognized. Mr. Overstreet testified that an officer of the Trust Company definitely assured him the right would not be exercised and explicitly gave him possession. The officer insisted that he only expressed the opinion that it would not be, but refused to commit anyone definitely on the proposition, and only acquiesced in Overstreet's possession on condition that he pay the same rent that was collected the previous year. Overstreet expended $600 in repairing the property but retained all the rents and paid no taxes. It is observed, however, that at the time of the re-sale the property was appraised for only $1,325. The intervening petitioner prayed that the status quo be restored; that no part of

the costs or expenses be charged against the $160 which had been paid by her husband as a deposit for the second sale; that same be returned to him; that she be permitted to pay off all the original bonds and be given a deed to the property. She also asked that the dispute over the $95 rent claimed by the Grinstead estate be left open for an independent action which the administrator and heirs should be required to bring. An amendment claimed that when the period for redemption expired Mrs. Overstreet had become vested with a fee simple title to the property subject to the lien of the bonds, and was entitled to all subsequent rents. Other items of an incidental nature and all other relief to which the intervenor might be entitled to were also prayed.

Concerning appellant's claim that she acquired a fee simple title or the equivalent, subject only to the lien of the bonds. It is well settled that a purchaser at a decretal sale acquires certain vested rights but receives no legal title until a conveyance is made by the court in accordance with the provisions of the Code. Sections 394, 396, 397, 398, Civil Code of Practice; Goodin v. Wilson, 114 Ky. 716, 71 S. W. 866, 24 R. 1521; Likens v. Pate, 160 Ky. 319, 169 S. W. 734; Smith v. National Union Fire Insurance Company, 239 Ky. 106, 39 S. W. (2d) 189; Johnson v. Baker, 246 Ky. 604, 55 S. W. (2d) 404.

Concerning the right to possession. Where property sold under order of court did not bring two-thirds of its appraised value, as in this case, the purchaser is entitled neither to possession nor a deed until the right of redemption is extinguished. Johnson v. Baker, supra. In no case is the purchaser entitled to possession of the property or to the rents, at least until there has been a confirmation of the sale. Elliott's Adm'r v. Bush, 3 Ky. Law Rep. 466, 11 Ky. Opins. 354; Ball v. First National Bank, 80 Ky. 501. The appellant recognized this, for her claim to having had the right to enter into possession is based upon the permission of the Louisville Trust Company, administrator of the personal estate of the decedent. The terms of the possession are in dispute. It is not shown by what authority the administrator could agree upon possession, rent free or at all, for the property belonged to the heirs.

The right of appellant to recover the value of im-

provements made in good faith upon the property is not involved in this case as the pleadings do not present the question.

It seems to us the judgment was proper and it is, therefore, affirmed.