**Anna Maude Dowell RICE, Appellant,**

v.

**R. L. DOWELL et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 6, 1959.

Rehearing Denied April 17, 1959.

J. Howard Holbert, Elizabethtown, Mosa D. Sphire, Brandenburg, for appellant.

Allen P. Cubbage, Leitchfield, J. R. Watts, Brandenburg, for appellees.

STANLEY, Commissioner.

This is an action to set aside a judgment on the ground that it was obtained through fraud upon the defendant and the court. It was agreed the case should be tried by a jury. At the conclusion of all the evidence, the court directed a verdict for the defendants. The complaint was dismissed by the judgment from which this appeal is prosecuted.

The judgment attacked was rendered on May 31, 1950, in a suit brought by R. L. Dowell, individually and as guardian of his daughter, Anna Maude Dowell, against Anna Maude Dowell to have it adjudged that she had no interest in certain land as an heir of her deceased mother, Mary E. Dowell, whose name appeared as a joint grantee in the plaintiff's deed to the land. The court adjudged that the wife had been named as grantee by mistake or inadvertence, that in fact she had no title and that R. L. Dowell individually owned the land in fee simple. The deed, which was thus judicially reformed, was executed February 5, 1932, by J. Ira Thompson and wife, as grantors, to "R. L. Dowell and Mary E. Dowell, his wife, parties of the second part." Throughout the deed the conveyance is to "parties of the second part" except in the habendum where the phrase is singular, namely, "the party of the second part." The instrument shows that Dowell was assuming the payment of a mortgage debt to the Federal Land Bank of $2,500. Mary E. Dowell died when Anna Maude was born on October 31, 1932.

Eighteen years after the execution of the deed, Dowell in his individual capacity and as guardian of his daughter, filed the suit against her for a declaratory judgment. She was then seventeen years old. The petition alleged that the name of Mary E. Dowell had been inserted in the deed for the sole reason that her husband and co-grantee had assumed the payment of the mortgage debt described and that, in fact, the plaintiff was the only grantee and is the sole owner of the property. The court was asked to render a judgment declaring the provision in the habendum of the deed to "define the extent of the ownership in the property" and to mean that the plaintiff was the sole owner and that the defendant, Anna Maude Dowell, had no interest in the land as the heir of her deceased mother. As stated, it was so adjudged.

On the trial of the present case the circuit court clerk testified he could not find that any summons was issued for the defendant, Anna Maude Dowell, in the first suit. Section 38 of the Civil Code of Practice provided that no appointment of a guardian ad litem should be made until the defendant had been summoned. The presumption is, in the absence of proof to the contrary, that the process was issued and served. Fleishman v. Goodman, 252 Ky. 535, 67 S.W.2d 691; Walker v. Perkins, 256 Ky. 442, 76 S.W.2d 251. The judgment recites that the defendant "was before the court." There is an order entered on the day petition was filed, April 20, 1950, appointing J. R. Watts guardian ad litem. Four days after his appointment, the guardian ad litem filed an answer stating that he was unable to make a defense. The guardian ad litem was not authorized to enter the child's appearance or act for her unless she had been brought before the court by service of summons. § 38, Civil Code of Practice; Rachford v. Rachford, 224 Ky. 831, 7 S.W.2d 234. It may be pre-

sumed that the appointment of the guardian ad litem was made after the service of a summons. Foreman v. Taylor, Ky., 239 S.W.2d 260.

Notice was served on the seventeen year old defendant that on May 18, 1950, a hearing of the case would be held at the courthouse in Hardinsburg, Breckenridge County, which is in the same judicial district as Meade County, where the suit was pending. The present record shows that the plaintiff, Dowell, and his attorney and his co-appellee, Dalton Tobin, were present at the hearing. Neither the infant defendant nor her guardian ad litem was there. Dowell and Tobin gave testimony, but what it was is not revealed in this record. A few days after the judgment was entered, Dowell sold one hundred acres of the farm to Tobin. He is a party defendant in this suit, the plaintiff asking that the conveyance to him be held invalid so far as her interest is concerned and that both defendants make an accounting.

The foregoing is the record of the original action. The case is to be distinguished from cases in which a judgment is attacked as void for want of jurisdiction. See, Metropolitan Life Ins. Co. of New York v. Myers, 270 Ky. 523, 109 S.W.2d 1194.

■ We look to the evidence in this record to see whether it establishes the two necessary grounds upon which the court may have been authorized to vacate the challenged judgment, namely, (1) fraud and circumvention of the prevailing party which prevented a defense being presented, and (2) that the defendant had and has a meritorious defense to the action. Metropolitan Life Ins. Co. of New York v. Myers, 270 Ky. 523, 109 S.W.2d 1194; Overstreet v. Grinstead's Adm'r, 283 Ky. 73, 140 S.W.2d 836; Dawson v. Clelland, Ky., 252 S.W.2d 694.

(1) During Anna Maude's first eight years she lived with her maternal grandparents. After she started to school, she stayed with her father and stepmother, except during weekends and vacation periods, which she spent with her grandparents until they died in 1943 and 1944. R. L. Dowell qualified as Anna Maude's guardian, apparently for the purpose of receiving and holding her inheritance from her grandfather.

The appellant testified that her father had asked her if she didn't think he should have her part of the farm, and she had answered, "Yes, I reckon." She didn't ask him any questions about the matter because she trusted him. He told her that if a certain named attorney should come to the school to see her, she should not talk with him. This attorney had represented her grandfather's estate. She never heard anything more about the matter. The father testified, "I tried to talk with her about it and she wouldn't talk with me." It is not clear whether he had reference to the title or to the law suit. The father further testified he told his daughter while in Mr. Watts' office that if she wanted an attorney, he would pay his fee, that he wanted her satisfied, but he did not think the attorney referred to was competent and that he would rather she would not talk with him. Mr. Watts corroborated Dowell.

The plaintiff further testified that her guardian ad litem never said a word to her about the case. But Mr. Watts testified that he had twice discussed the case with her, once when she came to his office with her father and another time when she was alone. After his appointment, he had examined the papers in the case and talked with the father. He consulted no one else. He admitted that he had never told Anna Maude that on the record she owned a half interest in the farm. Her uncles on her mother's side never heard of the case.

Anna Maude married in 1953 when she was less than twenty years old. She first learned in 1955 or 1956 that her mother's name was in the deed to the farm and that as her heir she had an interest in it. Her husband testified that when he asked her

father if Anna Maude hadn't inherited half of the farm, Dowell, with considerable profanity, told him that it was none of his business and for him to "keep your nose out of it." The husband then looked into the records.

(2) On the merits of the original case, Mr. Dowell testified that he alone paid the purchase price of the land and, over the plaintiff's objection, that the county clerk, in preparing the deed, had told him, "I believe it ought to be made to you and your wife on account of this mortgage." He testified that and that only was the reason for his wife's name being put in the deed. The court sustained an objection to the then county court clerk testifying as to why it was done. However, there was elicited from the witness out of the hearing of the jury, as an avowal, that when parties came to him to write deeds and a federal land bank lien on the land was being assumed, it was his custom to recommend that the wife's name be included as grantee, and that he followed that custom in drafting this deed.

The appellant's husband testified that not long after their marriage her father told him Anna Maude would get around $1,500 from her grandfather's estate when she became twenty-one, and observed the money would come in handy. He added, "When I bought this farm, Jess Dowell [his wife's father] gave me $2,000 and I don't know where I would be today if it wasn't for that $2,000." Dowell denied having told his son-in-law that. He didn't deny or admit receiving the money. There is undenied evidence that the plaintiff's grandfather had given her mother $1,000 at Christmas before the farm was bought. There was filed in the record the grandfather's cancelled check for $400 payable to Dowell and dated six months after the land was bought. Dowell could not recall what it was for. It is not shown that any of this money, if it was received, went into the purchase of the farm.

In summary, we have (1) testimony that for an absurd reason the wife's name had been put in the deed upon the recommendation of the draftsman, who patently had a tragic misconception of the legal requirement; (2) controverted evidence that the wife's father had given her and her husband a substantial sum of money about the time the farm was purchased, and (3) the unqualified testimony of Dowell that he had paid all the purchase money.

In this case the legal disability of infancy is not a primary ground upon which the application for relief from the judgment is sought under a statutory provision. KRS 454.110; CR 60.02. The suit is a direct and independent action which invokes the inherent power of courts to vacate their judgments for fraud practiced in their procurement at the instance of an innocent party. 31 Am.Jur., Judgments, § 653.

We have construed the term "fraud" in its relation to a successful party having obtained a judgment which was sought to be vacated under Section 518, subd. 4, of the former Civil Code of Practice as not being confined to a wicked motive or deliberate deceit or evil act purposely conceived but as including merely leading astray, throwing off guard or lulling into security and inaction with a resultant advantage to one party and apparent injustice to the other. Johnson v. Gernert Bros. Lumber Co., 255 Ky. 734, 75 S.W.2d 357. The quality of fraud of this character need not be so great in obtaining relief from a default judgment as when the aggrieved party has had his day in court. Cf. Rouse v. Rouse, 203 Ky. 415, 262 S.W. 596.

In the present case, the defendant was an intelligent girl, seventeen years old, a junior in high school. Her father and her guardian, in seeking to have her divested of a prima facie half interest in land, should have been very careful to see that she knew what was going on. We do not believe she did, but if so, we are sure that she did not realize what the result would be. Still, the processes for legal divestiture were observed, at least technically.

There is a presumption of legality and validity. The plaintiff had to bear the burden of showing that the judgment was procured by fraud or deceit and that she had and has a meritorious defense. Clear and convincing evidence of fraud is demanded in these cases where there has been due procedure. On the appeal the judgment refusing the application to vacate the former judgment should not be disturbed except upon a firm belief that the finding of the trial court was erroneous. Notwithstanding a feeling of doubt, giving due consideration to the three factors that must control our decision—fraud or deceit, a meritorious defense, and the trial court's decision—we are constrained to hold that the evidence does not meet the high quality and character required to vacate a judgment or reverse the present one.

The judgment is affirmed.