**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Grady CONLEY, Administrator of the Estate of S. Y. Allen, et al., Appellees.**

**The SALYERSVILLE NATIONAL BANK, Appellant,**

v.

**Grady CONLEY, Admr., etc., et al., Appellees.**

Court of Appeals of Kentucky.

June 1, 1973.

Rehearing Denied Sept. 14, 1973.

———◆———

Earl R. Cooper, Salyersville, E. Preston Young, Jack Q. Heath, Louisville, for Ky. Farm Bureau Mutual Ins. Co.

Marcus Mann, Salyersville, for The Salyersville National Bank.

Earl Cornett, Cordell H. Martin, Hindman, Marcus Mann, Salyersville, Walter W. Turner, Perry & Greene, Paintsville, for appellees.

PALMORE, Chief Justice.

In January of 1963 the Salyersville National Bank (hereinafter the bank) filed suit against the late S. Y. Allen to foreclose a $2500 mortgage on a house and lot in Magoffin County. The house and its contents were insured against fire in the amount of $6,000 * by Kentucky Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau), with a standard mortgage clause in favor of the bank. Following a default judgment the property was appraised at $3,000 and on May 27, 1963, was sold at the courthouse door to Merlin Taulbee for $2825. Taulbee and his surety, Roy Arnett, executed bond for the purchase price, payable in six months, and the master commissioner duly filed his report of sale.

On June 6, 1963, the house was destroyed by fire. Meanwhile, there had been no order directing the report of sale to lie over for exceptions and, perforce, no order confirming the sale. The next thing that happened was the entry on June 24, 1963, of an agreed order (agreed to by Allen, Taulbee, and the bank) as follows:

"WHEREAS the mortgaged property subject of this action was sold by the Master Commissioner of the Magoffin Circuit Court at public auction on May 27, 1963, and WHEREAS Merlin Taulbee became the purchaser at said Sale and WHEREAS the defendant, S. Y. Allen is exercising his right to redeem said property, came Merlin Taulbee and relinquished all his right, title and interest in said property as said purchaser at said sale; upon agreement of all the parties said sale is held null and void. This order is conditioned upon payment of plaintiff's claim, interest and costs herein by defendant's insurer of the subject property the balance of said insurance to be paid to the defendant S. Y. Allen. This the 20 day of June 1963."

■ (Since the property brought more than two-thirds of its appraised value Allen had no "right to redeem." Cf. KRS 426.530.)

Farm Bureau declined to pay for the loss, whereupon by amended complaint the bank made it a party defendant. Farm Bureau denied liability on the ground that when the house burned the insured parties no longer had an insurable interest in it.

Shortly after the bank filed its amended complaint M. C. Whitaker filed a suit against Allen, Farm Bureau and the bank asserting a $3450 claim against the proceeds of the insurance policy by virtue of an assignment from Allen dated July 4, 1963. He alleged that the assignment had been given to and accepted by him in satisfaction of a debt (which, according to the assignment, had been reduced to a judgment followed by writ of execution) and pursuant to a promise by Farm Bureau that it would pay the debt if he would obtain the assignment; that he had accepted the assignment and foregone other means of collecting the debt in reliance upon this promise; and that Farm Bureau was thereby estopped to deny liability as to

---

* The briefs indicate that the coverage on the house was $4,000.

him. Farm Bureau denied these allegations. By agreed order the two lawsuits were consolidated.

In a second amended complaint the bank sought alternative relief against either Farm Bureau or Taulbee and his surety, Arnett, on the purchase-money bond. Allen, the original foreclosure defendant, filed a cross-claim against Farm Bureau alleging that it had agreed to pay the claims of the bank and Whitaker and that the order setting aside the sale and the assignment to Whitaker had been made pursuant to that agreement. This was denied by Farm Bureau. Neither Taulbee nor Arnett answered.

After a trial on depositions the bank moved that the agreed order setting aside the judicial sale be vacated and the sale be confirmed. The case was then submitted for judgment.

Judgment was entered without findings of fact and conclusions of law. It simply sustained the claims of the bank and Whitaker against Farm Bureau and denied the bank's motion to reinstate and confirm the judicial sale. Farm Bureau appeals against Allen, Whitaker and the bank. The bank appeals against Allen, Whitaker, Taulbee, Arnett and Farm Bureau.

The only clue as to the supporting reasons for the judgment is provided by the following excerpt:

"Before the sale was confirmed, parties to the sale came into Court with agreed order signed by said parties to the sale to have same set aside. This Court is of the opinion they had a right to do that."

In view of this statement in the opinion and judgment, and of the insufficiency of evidence to justify a finding that any authorized agent of Farm Bureau ever negotiated, compromised, or agreed to pay the proceeds of the policy to anyone, we assume that the basis for the judgment was that the agreed order setting aside the judicial sale had placed all the parties, including Farm Bureau, in status quo nunc pro tunc, in which event the insurance was payable and the condition of the agreed order would be satisfied through payment of a judgment against Farm Bureau.

It is elementary, of course, that the agreed order of June 24, 1963, could not validly prejudice the rights of the insurance company, which was a party to neither the litigation nor the agreement.

■ If the company was liable under its policy the agreed order would adversely affect its interests in two respects. One is that its right of subrogation (hereinafter discussed) to recoup its loss from the proceeds of the judicial sale would be destroyed. The other is that Allen's interest in the property, which at the time of the loss could have amounted to no more than a lien to secure the payment of $325, would be restored to the face value stated in the policy. KRS 304.905 (since repealed by Acts 1970, ch. 301, subtit. 99, § 3). It is our opinion that the company was not and is not required to pay under those conditions, and since by its express terms the order was conditioned upon such payment it is of no effect and should have been set aside.

Deferring for the moment the question of the bank's noncompliance with the notice provision of the standard mortgage clause, quoted *infra*, we shall address our inquiry to the effect of the judicial sale.

■ Absent a valid ground to prevent confirmation of the sale, the equitable title of property passes with a judicial sale and acceptance of the purchase-money bond or bonds. Cook's Adm'r v. Franklin Fire Ins. Co., 224 Ky. 360, 6 S.W.2d 477, 479 (1928). The controlling element "is not the confirmation, but the purchaser's compliance with the terms of the sale." Smith v. Nat'l Union Fire Ins. Co., 239 Ky. 106, 39 S.W.2d 189, 190 (1931). If an insurance policy theretofore issued to the person whose interest is sold provides against a transfer of title or interest, the insurer

may avoid payment. *Ibid.* Nor can the purchaser recover on the policy. Franklin Fire Ins. Co. v. Cook's Adm'r, 216 Ky. 15, 287 S.W. 553 (1926). This is consistent with "the general doctrine that the contract of sale vests the equitable ownership in the purchaser, with the consequent risk of loss regardless of possession." See annotation, *Vendor and purchaser; risk of loss by casualty pending contract for conveyance,* 27 ALR 2d 444, 449, citing Kentucky authorities.

With respect to Allen, the mortgagor, it is clear that if the policy had provided against a transfer of title or interest he could not have recovered upon it. However, it did not so provide, and the questions to be answered are whether he had an insurable interest in the property, and, if so, what is the extent of the insurance company's liability to him?

We find no express language in the policy conditioning its coverage upon Allen's ownership. It insures him in an amount not exceeding the face value, "to the extent of the actual cash value of the property at the time of loss" but in no event "for more than the interest of the insured." Probably, though we need not so decide, had there been no sale of the property KRS 304.905 would have fixed Allen's recovery at the value stated on the face of the policy. As it is, however, the foreclosure judgment and ensuing sale reduced his interest from a fee-simple title to a beneficial security interest of $325.

 KRS 426.715 (formerly Civil Code § 699) provides: "A lien shall exist on real property sold under an order of court, as security for the purchase money," etc. Whether such lien can or cannot be directly enforced by the parties ultimately entitled to the proceeds of the sale, certainly they are its beneficial owners. It is the general rule that the beneficiary of a trust may insure his interest in the trust property. Couch on Insurance 2d, § 24.99; Appleman on Insurance, § 2133 (1969 ed.) It is likewise the general rule that an executory contract of sale does not extinguish the vendor's insurable interest. Couch on Insurance 2d, § 54.227. By analogy at least, we conclude that Allen had an insurable interest in the property at the time of the loss, but it had been reduced to the value of his share in the proceeds secured by the lien, which was $325 and the interest thereon. This was the extent of "the interest of the insured" (Allen) covered by the policy.

For the same reasons, and quite aside from the standard mortgage clause, the bank also had an insurable interest to the extent of its interest in the proceeds secured by the statutory lien.

 Unquestionably, upon payment to the bank the insurance company will be subrogated to the bank's interest in the proceeds of the sale. Twin City Fire Ins. Co. v. Walter B. Hannah, Inc., Ky., 444 S.W.2d 131 (1969). By parity of reasoning and by virtue of simple equity, so will it be subrogated to Allen's interest upon payment of the $325 and interest, which is all that can pass to Whitaker under his assignment from Allen. The net result is that the insurance company is liable to the respective insured parties for the amount of the purchase-money bond and it will be subrogated, upon payment, to their rights in the proceeds of the judicial sale. Taulbee, the purchaser, who bore the risk of loss and failed to insure against it, cannot derive any benefit, direct or indirect, from the policy here in litigation. Twin City Fire Ins. Co. v. Walter B. Hannah, Inc., Ky., 444 S.W.2d 131 (1969).

 We come finally to the insurance company's contention that the bank did not comply with the requirement of the standard mortgage clause placing upon it the duty to give notice of any change in title. The clause reads as follows:

"Losses and damage; if any, under this policy shall be payable to the mortgagee (or trustee) named on the first page of this policy, as interest may ap-

pear, and this insurance as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property nor by any change in the title or ownership of the property nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that in case the mortgagor or owner shall neglect to pay any premiums due under this policy the mortgagee or trustee shall on demand pay the same.

"Provided also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy it shall be noted thereon and the mortgagee (or trustee) shall on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This Company reserves the right to cancel this policy at any time as provided by its terms but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee or trustee of such cancellation and shall then cease and this Company shall have the right on like notice to cancel this agreement.

"Whenever the Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner, no liability therefore existed this Company shall to the extent of such payment be thereon legally subrogated to all the rights of the party to whom such pay-

ment shall be made under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee, (or trustee) the whole principal due or to grow due on the mortgage with interest accrued thereon for the date of such payment and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities but no subrogation shall impair the right of the mortgagee (or trustee) to recover the Full Amount of his, her or their claim."

A sufficient answer, we think, to the notice argument is that the policy does not specify what consequences, if any, are to be occasioned by a change in ownership. The office of a standard mortgage clause is to secure the mortgagee against that very contingency. Even if the insurance company cancels the policy, as to the mortgagee it remains in force for 10 days after notice of cancellation. Therefore, had the bank notified the insurance company on the day of the sale, and had the company cancelled the policy on the next day, the policy would still have been in force at the time of the fire, which occurred on the 10th day following the day of the sale.

Since Taulbee and Arnett, the purchaser and surety, failed to plead, the bank's motion to have the agreed order set aside and the sale confirmed should have been granted.

The judgment is affirmed in part and reversed in part on Farm Bureau's appeal and is reversed on the bank's appeal, with directions for further proceedings consistent with this opinion.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.